BILLIE JEAN WATT, also known as BETTY LOU DUNN, by her mother, AGNES EILEEN RAYMOND, Appellant, v. MILDRED DUNN et al., Appellees.

No. 46626.

MARCH 6, 1945.

68

Kimball, Peterson, Smith & Peterson, of Council Bluffs, for appellant.

Roy W. Smith, of Council Bluffs, for appellees.

MILLER, J.—The petition for a writ of habeas corpus herein was filed by Agnes Eileen Raymond and asserted: That she is the mother of Billie Jean Watt, also known as Betty Lou Dunn, eight years old; when a small baby the child was given to defendants, Mildred Dunn and Roy Dunn, aunt and uncle of Agnes Raymond, to take care of until Agnes Raymond was in a position to furnish the child a home; she is now able and anxious to furnish the child such a home but defendants refuse to even permit her to visit the child. The prayer was that the care and custody of the child be taken from defendants and be awarded to Agnes Raymond. By amendment to the petition it was asserted: A search had been made to determine whether defendants had adopted the child but no record thereof was found; after these proceedings were commenced defendants contended that adoption proceedings were had in the municipal court of Council Bluffs; examination of the records of that court revealed that proceedings were had there which purported to be an adoption of Billie Jeanne Hedge, pursuant to a consent executed by Agnes Hedge; said consent was set out as Exhibit A; that Agnes Raymond (then Agnes Hedge), when but sixteen years old, signed the statement of consent pursuant to an agreement with her aunt, Mildred Dunn, that, when Agnes Raymond could furnish the child a home the child would be returned to her: defendant Roy Dunn told Agnes that the paper was prepared by him simply for the purpose of permitting the Dunns to care for the child; he did not tell Agnes that it was a consent for adoption; Agnes was not then advised and did not know the purport of the paper her uncle thus induced her to sign; she reposed confidence in her uncle, relied upon the statements of her aunt and uncle, believed that she was merely signing a paper which would enable them to care for the child until such time as she was able to furnish a home for it; that Billie Jean Watt was born February 8, 1936, in Woodbury County, Iowa; the birth certificate, recorded on March 10, 1936, shows that the

father's name was Pierce Watt and that the mother's name was Agnes Eileen Hedge; the purported adoption of Billie Jean Hedge is of no force and effect and is not an adoption of Billie Jean Watt.

The written consent, copy of which was attached to the amendment to petition as Exhibit A, was introduced in evidence as Exhibit 6 and provided as follows:

"Consent of Adoption

I, Agnes Hedge, the mother of Billie Jeanne Hedge, who was born out of lawful wedlock, February 8, 1936, not being in a position to provide for said minor child and for her care and desiring that she shall receive the benefits and advantages of a home with the care and training which she would there receive, herewith release all legal and parental control and authority over said child and all rights and claims to said child, and voluntarily agree and consent to the adoption of said child by Roy E. Dunn and Mildred A. Dunn of Council Bluffs, Iowa.

In witness whereof, the undersigned sets her hand this 11th day of May, A. D. 1936.                    Agnes Hedge, Mother.

Witness :------------------------------------------------------

------------------------------------------------------ .

State of Iowa, Woodbury County, ss.:

I hereby certify that this day appeared before me the undersigned, a Notary Public of said County and State, Agnes Hedge, to me personally known to be the identical person whose name is signed to the foregoing instrument as the mother of said child therein named, and that she being duly sworn, declared the facts to be as above stated, and acknowledged the instrument to be her voluntary act and deed for the uses and purposes therein set forth.

In testimony whereof, witness my hand, Notary Seal in Sioux City in said County this 11th day of May, 1936.

W. W. Lindgren, Notary Public,

[Seal]              .       .       Woodbury County, Iowa."

The answer of the defendants asserted: In the early part of 1936, plaintiff, Agnes Raymond, then Agnes Hedge, was sixteen years old, unmarried, and about to give birth to a child; her mother, Mary Hedge (Holland), was a sister of defendant

Mildred Dunn; Agnes and her mother knew that defendants had one son and wanted another child, but Mildred Dunn could not bear another child; Agnes and her mother requested defendants to take the child which was to be born; defendants agreed to adopt the child if it was a girl; on February 8, 1936, Agnes was delivered of a female child, which she named Billie Jeanne Hedge; thereafter, Mildred Dunn went to Sioux City, Iowa, saw the child and agreed to take it upon condition that Agnes agree to a complete and legal adoption by defendants, give up the child and not interfere with its custody; there was no agreement or arrangement for mere temporary custody; defendants were to raise the child as their own and to adopt it and have it as their own; in consummation of such agreement adoption proceedings were had in the municipal court of Council Bluffs, based upon Agnes' written consent to such adoption, and on August 7, 1936, a decree was entered giving said child in adoption to defendants; defendants have had the care and custody of the child since May 8, 1936, relying upon the agreement with Agnes and the adoption decree entered pursuant thereto, have lavished all of the love, care, and attention to the child as though she had been born to defendants; Agnes has seen the child but four times in the past eight years, has not contributed to its support and maintenance, not even remembering it on its birthdays and only once on Christmas, has shown no interest in it until recently, and has respected said agreement and legal adoption until recently; the welfare of the child will be best served by leaving her with defendants, who are the only parents she has ever known and who love her as though she were their very own. The prayer was that the proceeding be dismissed.

Trial was had, pursuant to which the court made findings of fact and conclusions of law. The facts found included the following: This child was born February 8, 1936, at Sioux City to Agnes Eileen Hedge, unmarried and sixteen years of age; the birth certificate names Pierce Watt as the father; on May 8, 1936, the child was given by Agnes Hedge to defendant Mildred Dunn, her aunt, who took it to her home in Council Bluffs; thereafter the ''Consent to Adoption'' (above set out) was signed by Agnes Hedge and was acknowledged before a notary public in

Woodbury county on May 11, 1936; the Billie Jeanne Hedge therein named is the same person as Billie Jean Watt named in the birth certificate; proceedings were had in the municipal court of Council Bluffs and a judgment and decree was therein entered adjudging that Agnes Hedge consented to adoption by Roy E. Dunn and Mildred A. Dunn and providing that, from the date of the decree, the child shall be the child of Roy E. Dunn and Mildred A. Dunn and shall be known as Betty Lou Dunn; since that time the child has lived in the Dunn home as their child, calling them father and mother, being raised as their own child with all of the rights and privileges of a child; no knowledge of such adoption having in fact been completed came to Agnes Eileen Raymond, the mother of the child, until after the filing of the petition for writ of habeas corpus herein; investigation had been made but no record thereof was found in Pottawattamie or Woodbury county records; the records of the municipal court of Council Bluffs were not searched until after plaintiff had been advised by defendants that there had been an adoption in said court.

The conclusions of law included the following: Ordinarily, in habeas corpus matters affecting custody of children, the best interests of the child present the principal question, but this is so only in cases where the rights of the parties in custody of the child are permissive, by agreement or sufferance, without the intervention of legal process; such is not the case here and no decision is required or made thereon; prior to the enactment of chapter 218, Acts of the Forty-second General Assembly, in 1927, the adoption of children by articles of adoption was loose, a matter of contract, recorded in the office of the recorder, and the cases bearing thereon are not pertinent; by said latter statute, the adoption of children became a judicial act, requiring jurisdiction of the parties and a judgment and decree and from the date thereof a child shall be the child of the petitioning adoptive parents, vested with rights of inheritance and the same rights which exist between parents and child by lawful birth; the adoption herein was made pursuant to such statute; the attack here made thereon is a collateral attack upon the validity of a decree of a court of competent jurisdiction which is regular on its face; such decrees cannot be set aside by collateral attack, but

must be directly attacked; it cannot be done in a habeas corpus proceeding; the petition herein alleges that defendants' custody of this child is illegal, but it is legal custody until the decree of adoption is set aside by direct attack thereon. Accordingly, the proceedings were dismissed and judgment was entered against the plaintiff for costs.

Agnes Raymond has appealed to this court. She asserts three grounds for reversal: (1) The decree of adoption may be attacked herein for extrinsic fraud such as here asserted, namely, that the consent to adoption, which was jurisdictional, was secured by fraud (2) no legal adoption was had because of error in the child's name (3) these proceedings in habeas corpus, involving as they do the custody of a child, are of special character and the welfare and best interests of the child are paramount. We will consider these three propositions in the same order in which they have been presented to us.

I. The trial court's holding that the decree of adoption herein was not subject to collateral attack was based upon repeated holdings of this court that it will be presumed a court's finding that it had jurisdiction over the parties was based upon adequate proof and such finding cannot be collaterally attacked. Giberson v. Henness, 219 Iowa 359, 368, 258 N. W. 708, and cases cited therein. We have also held repeatedly that, if the court had jurisdiction of the parties and the subject matter, its judgment or decree is not subject to collateral attack. Reidy v. Chicago, B. & Q. Ry. Co., 216 Iowa 415, 418, 249 N. W. 347, and cases cited therein.

However, in our early decisions it was definitely established that, where the jurisdiction of the court is secured through fraud, such fraud vitiates the judgment or decree and may be the basis for a collateral attack thereon. Pfiffner v. Krapfel, 28 Iowa 27; Dunlap & Co. v. Cody, 31 Iowa 260, 7 Am. Rep. 129; Whetstone v. Whetstone, 31 Iowa 276; Cowin v. Toole, 31 Iowa 513. The rule, thus established, has been repeatedly recognized and applied in our later decisions. Kwentsky v. Sirovy, 142 Iowa 385, 392, 121 N. W. 27; Heisinger v. Modern Brotherhood of America, 192 Iowa 46, 179 N. W. 161; Ferguson v. Connell, 212 Iowa 1155, 237 N. W. 354; Reidy v. Chicago, B. & Q.

Ry. Co., supra; Olds v. Olds, 219 Iowa 1395, 1404, 260 N. W. 1, 261 N. W. 488. Accordingly, the learned and distinguished trial court should have decided whether the jurisdiction of the municipal court of Council Bluffs was obtained through fraud perpetrated in securing the consent to adoption, on which such jurisdiction was predicated.

This brings us to the question whether this cause is to be tried in this court de novo. Appellant insists that it should be so tried and such seems to be the rule. Recently, in an analogous case involving custody of a child through habeas corpus proceedings, Wooley v. Schoop, 234 Iowa 657, 658, 12 N. W. 2d 597, 598, we stated, at the outset of our opinion:

"This case requires us to determine de novo the correctness of the ruling of the trial court denying a father custody of his eleven-year-old son in habeas corpus proceedings brought by the father."

To the same effect, see Allender v. Selders, 227 Iowa 1324, 1334, 291 N. W. 176, and cases cited therein. Appellees do not question such rule but join with appellant in urging us to decide this case de novo. Accordingly, we have carefully examined the record bearing on the charge that the adoption decree was fraudulently obtained.

Agnes Raymond testified that, on February 8, 1936, at the age of sixteen, she became an unwed mother; her own home was broken; she sought refuge in a Home dedicated to the assistance of such unfortunate girls; she saw her aunt, Mildred Dunn, at the Home, the latter part of March or fore part of April 1936; the two of them were alone; Mrs. Dunn said she would give the child a home and would take care of her until Agnes was able to do so; Agnes and the child were to remain at the Home until May 8th; on May 8th Agnes saw Mrs. Dunn at the Home; no one else was present; Mrs. Dunn took the child, but invited Agnes to visit them at Council Bluffs at any time and see the child and said that, when Agnes had a home for herself suitable for caring for the child, she was to have her again; on May 11th, Agnes met Roy Dunn at Agnes' mother's home in Sioux City; he said he had some papers for Agnes to sign, asked her to go with him to a notary public because he had to leave

immediately for Council Bluffs; he said they were just papers for permission to care for the child until Agnes was able to; he did not tell her they were for the purpose of adopting the child; the word "adoption" was not used; Agnes had confidence in her uncle when he said they would take the child until Agnes was in a position to make a home for it; Agnes believed that they would do that; had she known she was being asked to sign a consent of adoption she absolutely would not have signed such a paper; Agnes went with Mr. Dunn to the courthouse, which was two blocks from her mother's residence, and Dunn was present when the paper was signed; he took it with him; when Agnes was at the Home they arranged for all adoptions right there in the Home; that was the reason Agnes wanted her uncle and aunt to take the child, rather than to have an adoption, and she understood that, as soon as she was in a position, she would take the child with her.

The testimony of appellees was, in some respects, directly opposed to that of appellant. Mildred Dunn testified that in 1936 she had correspondence with her sister, Mary Holland, the mother of appellant, then Agnes Hedge; Agnes was then living at Sioux City with her mother; the correspondence was before the baby was born; Mildred Dunn went to Sioux City a month after the baby was born and saw Agnes and the baby; Agnes asked if she was going to take her baby; Mrs. Dunn said she would but that adoption papers had to be made out before she would; she said she did not want to become attached to the child, love it, take care of it, and then have to give it up; she said she had always wanted a girl but could not have one and the next thing she could do was to adopt one; she had had an operation that made it impossible to have another child; Agnes brought out the baby and said, "Here Aunt Mildred is your baby"; when Mrs. Dunn said she would not take the child except upon legal adoption, Agnes said, "All right Aunt Mildred, that is the way you will have it"; Agnes said there was another family looking for a child and if she did not get it, it would be adopted out; Agnes said she could not take the child and her mother would not have it; Mrs. Dunn returned to Council Bluffs and they consulted Roy Smith, an attorney, about getting adoption papers; Mrs. Dunn returned for the baby on May 8th and

brought it home to Council Bluffs; her husband took the consent for adoption to Sioux City and the papers were mailed back to them; the adoption was had in August 1936.

Roy Dunn testified that he did not accompany his wife to Sioux City in connection with the child; on May 8, 1936, he met his wife at the depot when she brought the baby home; he consulted Roy Smith, an attorney, about the adoption; Mr. Smith prepared the consent to adoption (Exhibit 6); Dunn took it to Sioux City and showed it to Agnes Hedge; it was May 9th or 10th; it was at Agnes' mother's home; Agnes read Exhibit 6; Dunn discussed it with Agnes and her mother; he told them it was to be signed before a notary public; he did not know the name of the child's father; at no time did Agnes give him any other name for the child than Billie Jean Hedge; Agnes did not ask to change that name in Exhibit 6; Exhibit 6 was attached to Exhibit 5, the petition for adoption; he left the papers with them. Dunn was not present when Agnes signed Exhibit 6; he did not go to the notary public with her at the courthouse; later he received the papers back from them with Exhibit 6 signed before a notary public; Dunn told Agnes they would not take the child unless they could adopt it.

In rebuttal Mrs. Raymond denied that her aunt and uncle at any time said anything to her about adopting the baby, denied that Dunn showed her the consent, reasserted that they went to the courthouse, where Agnes signed the papers; Dunn asked for a notary; one came over to them; Dunn took the papers out of his pocket and said he would like to notarize them; Agnes signed them; Dunn took them; Agnes returned home; Dunn and Agnes were not with her mother at any time on that day; Agnes did not read the consent, had no opportunity to read it, did not ask to read it; the notary did not ask her if she had read it; he asked her if she knew the facts and she told him that her uncle had told her about them.

There was much additional evidence but the foregoing is substantially all the evidence touching upon the actual signing of Exhibit 6 by Agnes Hedge. Obviously, either appellant is mistaken about some of the vital facts of the occurrence or the Dunns are. If the Dunns are correct in their recollection of the

transaction there is no basis for the charge of fraud now lodged against them. Appellant contends that her version of the transaction is correct and that fraud has been established, in accordance with our holding in Westendorf v. Westendorf, 187 Iowa 659, 174 N. W. 359. It therefore becomes necessary for us to pass upon the credibility of the testimony. Both sides rely upon the surrounding circumstances and the subsequent conduct of the parties in this regard.

The evidence is too voluminous to be reviewed in detail. Much of it is in sharp conflict. We will only attempt to outline it. Appellees rely upon the fact that appellant concedes that at no time has she sent the Dunns any money for the care of the child; she has seen the child eight times in eight years; prior to her marriage in 1941 she did not remember the child on its birthdays or Christmas and has not done much in this respect since; she had never asserted a right to custody of the child prior to bringing these proceedings in May 1944, although she has been very comfortably situated since her marriage in 1941. Appellant explains her apparent lack of attention to the child prior to 1941 by reason of straitened financial circumstances, the fact that she was earning a meager living in Idaho and later in California, and that appellees were not co-operative. She asserts that, after her marriage in 1941 the situation on the west coast was unsettled by the approach of war and later development of hostilities and she and her husband were living in an apartment (owned by her husband) in which children were not allowed; but just prior to the commencement of these proceedings she and her husband acquired a very nice home, which will be particularly advantageous for the rearing of children. There is much other evidence, of course, but such is the general tenor of it.

There is one important factor in this case which is in direct contrast to the factual situation in Westendorf v. Westendorf, supra, upon which the appellant relies herein. In the Westendorf case, the child was born in lawful wedlock and the fraudulent conduct was primarily that of the child's father inducing the mother to sign articles of adoption to the child's paternal grandmother, under the pretext that the custody would be merely during the time that the child's parents were temporarily

separated. Here, the situation is quite different. Agnes Hedge, at the age of sixteen years, was faced with one of life's great tragedies—that of being an unwed mother. Her innocent baby was faced with the possibility of being considered by a haughty, cruel, and cold society as a waif, conceived in sin and condemned to live in disgrace. Our adoption statute, chapter 473, Code, 1939, has undertaken to obviate the harshness of the common law in reference to such unfortunate children. Section 10501.6 provides:

"Upon the entering of such decree, the rights, duties and relationships between the child and parent by adoption shall be the same that exist between parents and child by lawful birth and the right of inheritance from each other shall be the same as between parent and children born in lawful wedlock."

Accordingly, it seems but natural that the Home, where Agnes took refuge for the birth of her baby, should be interested in securing proper and legal adoptions of such unfortunate children. It seems but natural that the Dunns should consider the matter of adopting Agnes' baby, giving it their name and the same legal status of a child born in lawful wedlock. The recollection of the Dunns that such matter was considered, discussed, and eventually decided, seems more reasonable and persuasive than Mrs. Raymond's recollection that the matter was neither considered nor discussed. On the whole record, we are disposed to the view that the Dunn version of the transaction is the more credible. For a judgment to be set aside for fraud, the fraud must be clearly shown. Hulverson v. Hutchinson & Co., 39 Iowa 316. The plaintiff's evidence fails to meet that test. Accordingly, we hold that the decree of adoption was not vitiated by fraud incident to its procurement.

II. Appellant's second proposition is that the decree of adoption is invalid because of an error in the name of the child. There is no merit in such contention. Section 10501.5, Code, 1939, requires that, at the hearing in an adoption case, "the court shall be satisfied as to the identity and relationship of the persons concerned." There is no question, under this record, regarding the identity and the relationship of the persons

concerned. The cases on which appellant relies arose under the former procedure of adoption by articles. They are in no way controlling on the question that is presented herein. Adoption statutes, which require a decree of court, are not subject to the rules of strict interpretation such as were applied to statutes providing for adoption by articles and a misnomer of the child cannot be made the basis for a collateral attack on such a decree. Magevney v. Karsch, 167 Tenn. 32, 65 S. W. 2d 562, 92 A. L. R. 343.

■ III. Appellant's final proposition is that the best interests of the child are paramount and require a change of its custody. There is no merit in this contention. The trial court ably pointed out that the cases upon which appellant relies are not in point and are in no way controlling. They involve situations where the party with custody of the child occupied such status by agreement or sufferance. That is not the case here. In the eyes of the law Mildred and Roy Dunn are the mother and father of their daughter, Betty Lou Dunn. The three of them constitute a legal family, which the law will jealously foster, preserve, and protect. Unless very impelling reasons exist, this legal family should not be broken. There is abundant evidence that Mildred and Roy Dunn are performing all of their duties and obligations as parents in a very commendable manner. There is no evidence to the contrary. There is no reason for interference on our part.

The cause is—Affirmed.

HALE, C. J., and GARFIELD, SMITH, MULRONEY, BLISS, OLIVER, and WENNERSTRUM, JJ., concur.