GLEN DAVIS et ux., appellees, v. RICHARD D. RUDOLPH, appellant, and GEORGE C. DALTON, in whose favor a verdict was directed.

No. 47767.

(Reported in 45 N.W.2d 886)

FEBRUARY 6, 1951.

REHEARING DENIED APRIL 6, 1951.

Richards & Richards, of Red Oak, White & Bruner, of Carroll, and Rudolph & Rudolph and Dalton & Dalton, all of Atlantic, for appellant.

Jones, Cambridge & Carl, of Atlantic, and J. R. McManus, of Des Moines, for appellees.

MULRONEY, J.—This is another case in the long series of litigation between the parties over a farm in Cass County. The litigation started with a petition in equity filed May 18, 1944 by Davis and his wife against Wilson and Rudolph wherein it was prayed that certain deeds to Wilson, the grantee therein, be decreed to have been given only as security for indebtedness owing by plaintiffs to Wilson. That case reached this court and our opinion, Davis v. Wilson, reported in 237 Iowa 494, 21 N.W.2d 553, quieted title in Rudolph who was Wilson's grantee. While that case was pending the trial court appointed a receiver on August 25, 1944. The receiver continued to act at least until our procedendo issued and was received by the clerk of Cass County on April 9, 1946.

On May 1, 1945, the receiver rented the farm to Glen and Carrie Davis, who had been in occupancy for many years, the lease to terminate March 1, 1946. The receiver did not serve on his lessees the November 1st notice (sections 562.6 and 562.7, Code, 1946) to prevent the tenancy from continuing for the next crop year, or 1946, but Rudolph did, on October 26, 1945, serve said notice. Our decision quieting the title in Rudolph was handed down on February 5, 1946 but it was not until April 8, 1946, after the petition for rehearing was denied, that procedendo in that case issued. On April 9, 1946, the day the procedendo was received, Rudolph served on the Davises a three-day notice to quit the farm. Following this notice, or on April 13, 1946, Rudolph filed an action of forcible entry and detainer to oust the Davises from the farm. The latter filed a motion to dismiss Rudolph's petition, the main grounds of which were that the so-called November 1st notice had not been served on them by the receiver and it affirmatively appeared they had been in peaceable possession for thirty days after March 1, 1946. The trial court sustained this motion, and Rudolph, declining to plead over, appealed to this court. The decision of this court in the latter action is contained in the opinion of Rudolph v. Davis, 237 Iowa 1383, 25 N.W.2d 332. There we held the statutes providing for the November 1st notice in order to prevent the tenancy from

continuing for the next crop year (sections 562.6 and 562.7, Code, 1946) did not apply to leases entered into by receivers appointed to take care of property pending litigation as to its ownership. We also held the occupancy of the Davises could not be held to be "peaceable" since there was the constant claim of plaintiff and defendants in that case asserting the right to possession and occupancy. Because of these findings we reversed the case and we are now down to the beginning of the present controversy.

When the opinion in the last case was first drafted by Justice Hale of this court, now deceased, the last two paragraphs of the opinion read as follows:

"It is apparent that after these months of litigation the plaintiff herein should not be further deprived of the possession of his farm. We conclude that the court was in error in its ruling on the defendants' motion to dismiss; that the right of possession was in the plaintiff and he is entitled to the immediate possession of the land.

"Finding as we do for plaintiff, it is unnecessary to review other alleged errors urged by him. It is therefore ordered that the defendants shall surrender possession of the land involved herein; that the ruling of the trial court is reversed, and that this cause is remanded to the district court of Cass County for such further disposition as may be necessary. Reversed and remanded with directions."

Before the opinion was agreed upon by the court these two paragraphs were changed to read as follows:

"It is apparent that the court was in error in its ruling, since under the record in this case it is shown that the right of possession was in plaintiff and he was entitled to immediate possession.

"Finding as we do for plaintiff, it is unnecessary to review other alleged errors urged by him. It is therefore ordered that the ruling of the trial court is reversed and that this cause is remanded to the district court of Cass County for such further proceedings and disposition as may be necessary.

"Reversed and remanded with directions."

Through inadvertence the opinion with the original last paragraphs was filed in our clerk's office and copies of this opinion were mailed to the trial judge and the attorneys in the case. On or about the day the opinion was handed down, or December 17, 1946, a copy of the correct opinion with the correct last paragraphs was sent to West Publishing Company. No petition for rehearing was filed in the case and on January 18, 1947 the procedendo of this court was filed in the Cass County Clerk's office. This procedendo in effect ordered the trial court to proceed in harmony with the incorrect opinion of this court. Thereafter, on February 3, 1947, Rudolph's attorneys presented to the trial court a decree providing that he was entitled to the immediate possession of the farm and to a writ of execution to remove the Davises from the farm. The court signed the decree ex parte and on February 6, 1947 execution for removal was placed in the hands of the sheriff. On February 10, 1947, about 10 a.m., the sheriff and his deputies proceeded to execute the execution of removal by serving the Davises and proceeding to remove their household goods from the farm home. Glen Davis notified his attorney of what was transpiring and about 5 p.m. the same trial court issued a stay order upon the application and motion of the attorney to set aside the judgment and decree of February 3, 1947. This present suit against Rudolph is for the damages the plaintiffs, Glen and Carrie Davis, sustained when their household goods and machinery were moved into trucks and along the roadside while the sheriff was executing the removal execution on February 10, 1947. But before going into the suit we will go forward with the events. Sometime after February 10, 1947 the mistake was discovered and an Order For Correction of Filed Opinion was entered in this court on February 17, 1947 which substituted the correct last two paragraphs for the incorrect paragraphs in the filed opinion. The trial court set aside the judgment and decree of February 3, 1947. It appeared the Davises had already filed an answer in the case on January 21, 1947, of which filing the trial court was unaware at the time he signed the February 3d decree. The action for forcible entry and detainer then went to trial and it is significant that in the trial the Davises introduced no testimony and rested at the close of Rudolph's testimony and ouster was decreed. This case too

594

was appealed to this court and the judgment and decree of the trial court was affirmed, the opinion appearing in Rudolph v. Davis, 239 Iowa 372, 30 N.W.2d 484.

We go back now to the present action by Glen and Carrie Davis against Rudolph for damages they sustained by reason of the sheriff's execution of the removal order. The original petition named Rudolph and his attorney, George C. Dalton, as defendants and alleged they conspired together with the deliberate design and purpose to wrongfully, fraudulently, and maliciously eject the plaintiffs from the farm. It listed the articles lost or damaged in the removal proceedings in the sum of $271.65 and alleged the acts of removal were done in the presence of plaintiffs' family and acquaintances, and plaintiffs were greatly humiliated, disgraced and injured in their good names and reputations and it prayed for judgment in the sum of $15,000. During the trial the court dismissed the action as against Dalton and the issue of malice. The court overruled the defendant's motion for directed verdict, one of the grounds of which was that the action was a collateral attack on a judgment that was not void. The jury returned a judgment against Rudolph in the sum of $1808.97 and from the judgment thereon the defendant appeals.

■■ I. The basis of plaintiffs' action is that the process—the execution of removal of February 6, 1947—was wrongfully issued. Defendant argues, and we think correctly, that the action does not lie unless the judgment of February 3, 1947 which ordered the execution of removal was void. "An execution is wrongful where the writ is issued on a void judgment, or on a judgment which has been satisfied * * * or * * * extinguished by a valid discharge in bankruptcy." 33 C. J. S., Executions, section 452. If the judgment was void the action for damages for wrongful issuance of process lies. 33 C. J. S., Executions, section 456. Plaintiffs did not plead an action for wrongful acts performed in execution of process. Their action is based entirely on the wrongful issuance of process. If the process was issued on a judgment that was not void then obviously the action is a collateral attack on a judgment which cannot be maintained.

We do not understand that plaintiffs dispute the above propositions of law. In their brief they meet defendant's argu-

ment by contending "the decree rendered on February 3, 1947 was utterly void and a nullity * * *."

II. The rule of 31 Am. Jur., Judgments, section 401, page 66, which we quoted with approval in Mahaffa v. Mahaffa, 230 Iowa 679, 683, 298 N.W. 916, 918, is as follows:

"There are many rights belonging to litigants—rights which a court may not properly deny, and yet if denied, they do not render the judgment void. Indeed, it is a general principle that where a court has jurisdiction over the person and the subject matter, no error in the exercise of such jurisdiction can make the judgment void, and that a judgment rendered by a court of competent jurisdiction is not void merely because there are irregularities or errors of law in connection therewith. This is true even if there is a fundamental error of law appearing upon the face of the record. Such a judgment is, under proper circumstances, voidable, but until avoided is regarded as valid."

In Reimers v. McElree, 238 Iowa 791, 796, 28 N.W.2d 569, 572, we said:

"It is also the established rule in this state that, where the court had jurisdiction both of the person and the subject matter, a judgment is conclusive against collateral attack, though it be erroneous. Allen v. First Nat. Bk., 191 Iowa 492, 180 N.W. 675; Ferguson v. Connell, 210 Iowa 419, 230 N.W. 859; Watt v. Dunn, 236 Iowa 67, 17 N.W.2d 811."

In Watt v. Dunn, 236 Iowa 67, 72, 17 N.W.2d 811, 814, the opinion states: "We have also held repeatedly that, if the court had jurisdiction of the parties and the subject matter, its judgment or decree is not subject to collateral attack. Reidy v. Chicago, B. & Q. Ry. Co., 216 Iowa 415, 418, 249 N.W. 347, and cases cited therein."

In In re Estate of Haga, 229 Iowa 380, 383, 294 N.W. 589, and in King City v. Southern Surety Co., 212 Iowa 1230, 1244, 238 N.W. 93, we quoted with approval this general statement of the rule as announced in Throckmorton v. Hickman, 3 Cir., N. J., 279 F. 196, 199:

"It is an established rule that the verity of the record and the validity of a judgment of a superior court of general juris-

diction cannot be collaterally impeached. * * * 'The general and well-settled rule of law in such cases is that, when the proceedings are collaterally drawn in question, and it appears on the face of them that the subject-matter was within the jurisdiction of the court, they are voidable only. The errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same court, to set them aside, or in an appellate court.' "

In Prichard v. Nelson, 55 F. Supp. 506, it is held, page 515: "If a judgment is rendered by a legally organized court which has jurisdiction of the subject matter and of the parties and power to render the particular judgment, it is not void because of some irregularity of the proceedings * * *."

In Werner v. Riemer, 255 Wis. 386, 403, 39 N.W.2d 457, 466, it is stated: "It is settled law that a judgment of a court which had jurisdiction of the subject matter of the action cannot be impeached and is immune from and not subject to collateral attack, even though patently erroneous."

██ ██ Applying the above general rule it would seem the judgment of February 3d was not void. The trial court had jurisdiction over the parties and the subject matter and jurisdiction to render the particular judgment entered. It is true, as plaintiff points out, that the judgment was rendered without proof to sustain the allegations of the petition but it was not thereby rendered void. Globe & Republic Ins. Co. v. Shields, 170 Tenn. 485, 491, 96 S.W.2d 947, 949, holding: "* * * if the decree had been supported by no proof, it would have been erroneous and not void, the court having jurisdiction of the parties and the subject matter of the suit."

The decree was not rendered void because it was entered without proof and after answer had been filed. McDonald v. Padilla, 53 N. M. 116, 202 P.2d 970; McIntosh v. Munson Road Machinery Co., 167 Miss. 546, 145 So. 731. The McIntosh case is somewhat like the instant case in principle. There the suit was against a sheriff and his surety for failure to return an execution issued in plaintiff's favor on a default judgment. The sheriff defended on the ground the judgment was void for there was an answer on file at the time it was entered. It was held

the sheriff's defense was a collateral attack on the judgment which could only be made if the judgment was void; that the judgment, though erroneous, was not void and not subject to the collateral attack.

Much is said in argument by plaintiffs' counsel assailing the judgment as violative of fundamental rights but the degree of faultiness of a judgment does not determine whether it is void or voidable. It is the source of the fault that is determinative. The source must be a jurisdictional defect before the judgment can be declared void and subject to a collateral attack. Kriv v. Northwestern Securities Co., 237 Iowa 1189, 24 N.W.2d 751.

The fact that the judgment entered was not in harmony with the true opinion of this court would not render it void. In Cooley v. Smith, 17 Iowa 99, 101, we said:

"That the opinion filed in this court directed a different judgment to be entered, from that which was finally rendered, cannot be made available to the defendants in this proceeding. The final judgment cannot be thus collaterally impeached, because the opinion shows, or tends to show, that a different one should have been entered, any more than an ordinary judgment of the district court may be collaterally impeached by showing that the facts upon which it appears to have been based, shows that a different judgment than the one recorded ought to have been rendered in the case."

See also Goodenow v. Litchfield, 59 Iowa 226, 9 N.W. 107, 13 N.W. 86, and Kelley v. Chicago, B. & Q. R. Co., 154 Iowa 87, 134 N.W. 566.

In Hayden v. Anderson, 17 Iowa 158, 166, we said: "That the judgment was inadvertently rendered by the court, may be good ground for a direct application to set it aside, but cannot be made available, collaterally."

The only argument advanced by the plaintiffs is that the judgment is "void and a nullity because in conflict with the prohibitions of Article I, section 9 of the Iowa Constitution and section 1 of the Fourteenth Amendment to the Constitution of the United States against depriving any person of life, liberty or property without due process of law since this decree was rendered without giving any consideration to the answer which

598

plaintiffs and appellees had filed in that case and without giving plaintiffs and appellees any right to be heard in their defense."

█ Plaintiffs cite text statements and statements in cases listing the elements of due process as notice and an opportunity to be heard and to defend in an orderly proceeding before a tribunal having jurisdiction of the cause. Such a statement of the general rule usually appears in cases involving statutes where it is asserted the statute denies one or more of the essential elements of due process. But that is quite different from the situation where the court having jurisdiction makes an erroneous or irregular ruling which denies a litigant an opportunity to be heard in defense. To hold otherwise would mean most every ruling of a trial court adverse to the defendant, would, if later found to be erroneous or irregular, constitute a denial of due process because it deprived him, in part at least, of his constitutional right "to defend." Due process is certainly not denied by a court's erroneous or irregular ruling, where, under the law, an opportunity is afforded the party against whom the ruling is made, to be heard in the same action on the question of the correctness or regularity of the court's ruling. Beck v. State, 196 Wis. 242, 219 N.W. 197.

Plaintiffs cite about a dozen cases. All but two involve direct attacks on the judgments or rulings entered by inferior courts. They are cases where appellate courts have held the statute or departmental regulation which was the basis for the trial court's judgment appealed from or the trial court's interpretation of such statutes or regulations constituted a denial of due process. Obviously they are not in point here. Windsor v. McVeigh, 93 U. S. 274, 278, 23 L. Ed. 914, 916, cited by plaintiffs, involved a collateral attack on a judgment in a criminal libel case where it was held the confiscation of McVeigh's property by the Federal Government under an Act of Congress, on the ground he was a rebel, offended against due process when he was not allowed to defend the action. The case is not in point. Hovey v. Elliott, 167 U. S. 409, 17 S. Ct. 841, 42 L. Ed. 215, is likewise not in point. There the court punished a defendant who was in contempt by striking his answer and refusing to consider his evidence and entering judgment against him pro confesso. In holding this judgment could be collaterally attacked

the supreme court likened it to the McVeigh case and held it denied due process. In both cases the opinions show the supreme court held the trial courts were without jurisdiction to render the judgments entered. Actually a judgment entered after notice and appearance followed by the striking of the appearance would be the same as if a judgment were entered against a named defendant without notice. In the McVeigh case the opinion states: "The denial to a party in such a case of the right to appear is in legal effect the recall of the citation [notice] to him."

As we have heretofore seen, a judgment entered without jurisdiction of the person is void.

We hold the motion for directed verdict on the ground that plaintiffs' action was a collateral attack on a judgment that was not void should have been sustained. The cause is reversed, judgment to be entered in conformity with this opinion in this court or the trial court, at defendant's election.—Reversed.

All JUSTICES concur except MANTZ, J., not sitting.