WINIFRED D. WOOD, Appellee, v. BEN S. WOOD, Appellant.

No. 43221.

442

OCTOBER 15, 1935.

F. E. Northup and H. Druker, for appellant.

J. W. Pattie, for appellee.

POWERS, J.—■ ■ ■ But one question is presented on this appeal, and that is, did the trial court improperly award custody of the children to the appellee under the circumstances disclosed in this case? For brevity and to avoid confusion, the appellant will be referred to as the husband and the appellee as the wife.

It is the claim of the husband in this case that the burden was upon the wife to show that there had been such a change in conditions since the first supplemental decree awarding custody to him was entered as to warrant a change in the custody of the children. The question as to where the burden lay, while not of controlling importance in this case, will be given first consideration.

I. The original decree awarded the custody of these children to the wife absolutely and without qualification. The supplemental decree which was entered upon the husband's application did not purport to change the permanent custody of these children. It purported to deal only with their temporary custody during the then existing incapacity of the wife. It provided ''that the defendant, Ben S. Wood, is now hereby awarded the temporary care, custody and control of the two children,'' and, further, ''provided, however, that in the event the said Winifred D. Wood is released and discharged from the Hospital at Independence, Iowa, and this court is satisfied and convinced that she is restored to physical and mental capacity to properly care for said children, that they shall be returned to her custody and control.'' There is no question in this case but what Mrs. Wood has been discharged from the hospital at Independence as cured and that she has been restored to such physical and mental

capacity as to be able to properly care for the children. At the time of the hearing in this case, there was nothing discernible in her appearance or conduct to suggest in the slightest degree that her physical or mental health was to any extent impaired. It would seem, therefore, that, strictly construed, the first supplemental decree has been fully executed and carried out and that the husband has had the custody and control of these children during the period provided by said first supplemental decree. The husband, while admitting that the wife is now in good physical and mental health, is objecting to the return of the custody to the wife because of the claim that she is afflicted with epilepsy and that at some time in the future she will experience epileptic seizures and mental deterioration, and that on that account she is not a fit person to have the custody and control of these minor children. Since the husband cannot claim custody under the terms of the supplemental decree, because the time during which he was to have the temporary custody under the terms of that decree has expired, the husband is, in reality, seeking in this proceedings to have changed the provisions of the original decree with reference to the permanent custody of these children. In view of that situation, it seems to the court that he is the one who must carry the burden.

■■■ II. It is asserted here on behalf of the husband, however, that it appears without conflict that the husband is a proper person to have the custody of these children, and it appears also without conflict that the wife is afflicted with epilepsy which will in the future produce epileptic seizures and mental unsoundness which will render her unfit to care for the children properly and that the court ignored this showing in entering the second supplemental decree, and therefore a reversal must follow. This contention cannot be sustained for several reasons:

■■■ First. The showing that the wife is suffering from epilepsy and the course that disease is likely to take in the future is made by the testimony of Dr. Stewart, superintendent of the hospital for the insane at Independence. It consists entirely of opinion testimony. The limitations of opinion testimony have always been recognized by this court. It is the settled rule that the trier of fact is not ordinarily bound to accept the opinions and conclusions of witnesses, even though undisputed by other opinion witnesses. Fitter v. Telephone Co., 143 Iowa 689, 121 N. W. 48; Moore v. C., R. I. & P. Ry. Co., 151 Iowa 353, 354,

131 N. W. 30; Fowle v. Parsons, 160 Iowa 454, 141 N. W. 1049, 45 L. R. A. (N. S.) 181.

Second. The opinion evidence in this case is not very persuasive. This is so, although no question as to Dr. Stewart's competency or veracity is involved. The doctor did testify that in his opinion the wife was afflicted with epilepsy; that the mental malady from which she suffered while in the hospital for the insane at Independence was epileptic insanity; that patients do not recover from epilepsy; and that it is reasonably certain that at some future time she will experience epileptic seizures with mental symptoms. He was able to diagnose her ailment as epilepsy, however, only because of a history of the case which was given to him at the time of her commitment. He never saw her have an epileptic seizure, and said that he would be unable to determine from observation of her that she suffered from epilepsy. He based his conclusion upon the report made to him that she had epileptic seizures when a girl about 17 or 18 years of age. She had no seizures while at the hospital, and the record is vague as to the character of the so-called seizures she experienced during the period immediately preceding her going to the hospital. At least, she had no such seizures for a period of 27 years following the time when it is claimed she had such seizures at the age of 17 or 18. It is claimed she had a seizure after returning from the hospital. That seems to have consisted of a fainting spell accompanied by nervousness. The doctor's testimony had to do largely with the general nature of epilepsy and epileptic insanity. He conceded readily that, if this woman had epileptic insanity, she made a remarkable recovery; that ordinarily patients committed to the hospital for epileptic insanity are never released; that ordinarily such patients become progressively worse. He could not say definitely that she would ever have epileptic seizures again. He gave it as his opinion that she would at some time in the future. This was on the assumption that her trouble had been epileptic insanity. But there was nothing to indicate when such seizures might be expected. She went 27 years without any mental disturbance between the time of the seizures when she was 17 or 18 years of age and the development of the mental symptoms resulting in her being committed to the state hospital for the insane. She may go that long without experiencing another period of mental disturbance. But, if she goes only half that long, these children will have

reached maturity. Moreover, the doctor did not entirely eliminate as factors contributing to the mental ill health which she experienced the fact that she had been suffering from domestic trouble resulting in the divorce proceedings, and the further fact that she was experiencing certain physical changes due to the period of age through which she was passing. These factors will not be operating to produce a recurrence.

Furthermore, it does not definitely appear that any harm could come to the children if the epilepsy with mental symptoms should reappear in the wife while the children are under her care. It appears that she takes care of the home for her father, and that she and the children make their home with her father. Mental disturbances she previously suffered were characterized only by extreme depression and loss of memory, and seem to have come on rather gradually. There is nothing to suggest that she may become suddenly and violently insane. The testimony of the doctor is that, if she has further seizures, they are likely to be of the same type and produce the same mental symptoms she previously experienced. So far as the welfare of the children is concerned, therefore, there seems no reasonable ground for apprehension as to their safety or welfare while committed to her care and custody, even though she should experience a recurrence of the mental disorder from which she previously suffered.

■■ Third. A further reason why this contention cannot be sustained is that it ignores considerations which must be weighed by the court in a situation of this kind, although they may not boldly appear from the cold, printed page of the abstract. They arise by inference from established facts and from facts of which the court will take judicial notice. It appears that the husband is employed during the day; that he employs a housekeeper to maintain the home; that, if these children were awarded to his custody, they would be largely under the immediate care of a housekeeper. The court will take judicial notice of the fact that children of the age of those involved herein are greatly in need of a mother's sympathy and affection and in need of the tender care and consideration which only a mother can give, and that there is no satisfactory substitute for a mother's love. That she is the natural custodian of the children cannot be doubted. To separate children from a mother possessing a normal outlook upon life and the normal motherly instincts is a tragedy which should be avoided wherever reasonably possible. It appears in

this case that the mother is in all respects presently capable of caring for these children. She has the normal mental outlook and the normal motherly affection for the children, and is physically, as well as mentally capable of taking care of their every need. The court, considering the matter only from the standpoint of what is best for the children, will not deprive these children of the loving care of a normal mother upon a showing of the possibility of harm to them as remote as appears in the present case. The custody of these children is always subject to the control of the court, and, if in the future a situation develops requiring that a transfer of the custody of these children be made, the court can deal with the situation when it arises.

 Fourth. While this proceeding is, of course, in equity and triable de novo here, this court has long recognized that in matters of this kind the trial court should be vested with some discretion. It is the settled rule in this state that the discretion of the trial court in awarding custody of minor children in a divorce proceedings, or in changing the custody after the divorce where the court has jurisdiction, will not be disturbed except where it appears that that discretion has been abused. Barish v. Barish, 190 Iowa 493, 180 N. W. 724. It does not appear here that there has been any abuse of the trial court's discretion.

 III. There is a further reason why the last supplemental decree of the trial court cannot properly be disturbed. We have seen that the question before the court here is, in reality, whether the original decree of divorce awarding custody of the children to the wife is to be changed. The second supplemental decree from which this appeal is taken but reaffirms the provisions of the original decree as to custody of the children. The court, in effect, is asked to change the permanent custody of these children as fixed in the original decree because of the conclusion that the wife had epilepsy based on the fact she had seizures many years before the original decree was entered. It is well settled that the custody cannot be changed after the divorce decree disposing of the custody has been entered except on a showing of a change in conditions since the entry of that decree. In this case it is quite clearly apparent that Mrs. Wood's condition now and her fitness to care for the children is much better than it was when the original decree was entered. That her health was not good then may be inferred from the fact that she was, in March, given a decree of divorce on the ground that her

treatment by her husband was such as to impair her health and endanger her life, and from the further fact that in May of the same year she was committed to an institution for the insane. Her actual condition now is better than when the original decree was entered. If she has a disposition to epilepsy now, she had it when the original decree was entered. To adjudicate now that she is not entitled to the custody of the children because she is epileptic, and base that conclusion upon seizures which she experienced when she was 17 or 18 years of age, is to readjudicate what was adjudicated by the original decree. This cannot be done. Stone v. Stone, 212 Iowa 1344, 235 N. W. 492; Neve v. Neve, 210 Iowa 120, 230 N. W. 339. Since the actual condition of the wife is better now than when the original decree was entered, and since the disposition toward epileptic insanity which exists now existed when the original decree was entered and that fact was known, there would seem to be an absence of that change in conditions since the original decree was entered which would justify an interference with the provisions of the original decree.

Because of the reasons herein pointed out, the decree of the district court should be, and it is hereby, affirmed.—Affirmed.

All Justices concur.