Emmett Jackson and Edith Jackson, Appellants, v. Emery Earl Russell, Geraldine Russell and Lucille Russell, Appellees.

## Gen. No. 9,738.

Opinion filed March 7, 1951. Released for publication April 3, 1951.

Louis L. Mason and Francis R. Wiley, both of Decatur, for appellants.

637

FRANK J. GOLLINGS, of Decatur, for appellees.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

On April 19, 1950, Emmett Jackson and his wife, Edith Jackson, petitioned the county court of Macon county for the adoption of their granddaughter, Lucille Russell. Lucille was born in December 1946, and was the daughter of Mrs. Jackson's son by a former marriage, Emery Earl Russell, and his wife, Geraldine Russell. The county court denied the petition for adoption, but on its own motion the little girl was made a ward of that court, and committed to the care and custody of the petitioners, and the Chief Juvenile Probation Officer or her successor in office, was appointed guardian of the person of Lucille.

Lucille is one of two children. The parents married July 3, 1944, in Newark, New Jersey, while Emery Earl Russell was in the United States Navy. The mother, Geraldine, was then 19 years of age. Lucille is about a year younger than her sister, Gerry. Lucille, the child sought to be adopted, is crippled and walks with a limp.

The basis for this petition for adoption is the allegation that the natural parents are unfit, by reason of having abandoned her. Service on the mother was had by publication, while the father entered his written appearance and consented to the adoption. An answer denying the material allegations of the petition was filed by the mother in due time. The father of the child, Emery Earl Russell, was an inmate of the Illinois State Penitentiary at the time of the hearing, to which place he was committed by the Cook county criminal court for armed robbery.

It is admitted by the parties that the petitioners are good moral people and are capable of properly caring

638

for and rearing the child. This is also established by the evidence.

■ We must distinguish the rights of the parties and the authority of the court in an adoption matter such as this, from a chancery action involving mere custody of a child. Custody is one thing, adoption is another. *Hill v. Allabaugh,* 333 Ill. App. 602, at 607. The welfare of the child is a much more appropriate yard stick in a custody case than in an adoption matter. Adoption, which affects the course of inheritance, deprives the child of a place in which it was placed by nature, and by force of law thrusts the child into another relationship, while severing forever and conclusively the legal rights and interests of the natural parents, and is a very different matter from a change of custody, which could be on a temporary basis. *People v. Cole,* 238 Ill. App. 413.

■ The rights of natural parents to their children must not be terminated, unless a clear and convincing case is made in strict compliance with the adoption statute. *Harmon v. Starbody,* 219 Ill. App. 603 and *Keal v. Rhydderck,* 317 Ill. 231.

■ It was not the province of the trial judge, nor is it the privilege or duty of this court on review, to determine if the natural parents or the petitioners could better provide for this child. We must decide solely if the statutory grounds for adoption had been proven. A full recital of the facts is necessary to determine if the natural parents have abandoned this child.

After the father's release from the Navy, the Russells lived either with her parents in New Jersey, or with the petitioners in Decatur. However, for one year following September 1946, which Emery Earl Russell spent as an inmate of the New Jersey Penitentiary, for automobile theft, Geraldine lived in an apartment in Orange, New Jersey with her two children. During

639

this year the mother was under the guardianship of the State of New Jersey and received protection and financial help. The guardianship ended upon the release of Emery Earl Russell from the New Jersey Penitentiary.

The children, with their parents, came to Decatur for the first time in August 1948, and established their home with these petitioners. On January 9, 1949, the parents of the children left Decatur, but the children remained with these petitioners. In March, Geraldine returned to Decatur and took the children to Chicago for two months, after which their father brought both girls back to his mother's home. The Russells then found employment with a carnival and toured the country until after Labor Day of 1949.

During this time these petitioners had cared for and supported the children with no help from the natural parents. The parents of the little girls then returned to Decatur. Emery Earl Russell gave his $200 Illinois bonus check to his mother, which was used by her to pay a finance company obligation of his, which obligation was guaranteed by her husband, Emmett Jackson.

The police were then searching for Emery Earl Russell and he left Decatur, and thereafter his wife demanded that these petitioners turn the two children over to her. There is a dispute in the testimony at this point as to whether Geraldine demanded both of the children or just Gerry. It was claimed by Mrs. Jackson that the mother showed affection for only Gerry and not for Lucille, and at the time she took Gerry she did not request Lucille, and that no one prevented her from taking Lucille with her.

On this conflicting point the state's attorney of Macon county testified that in the latter part of 1949, Geraldine Russell came to his office to complain that one of her children was being kept from her and asked

his advice as to the proper procedure in securing her return.

██ The conduct of the natural parents of these children creates a deep and unfavorable impression and engenders great sympathy for the little one especially, in view of the indication that she will need future medical care for her leg. The love and affection and sincerity of the petitioners is admirable. Even with this conclusion clearly established the adoption statute and the degree of proof required remains unchanged. We are not permitted, nor was the trial judge permitted, to disregard the established law in an effort to do what he or we might like to do for this child. If there has been no abandonment there can be no adoption.

██ We can easily see how the trial judge concluded that there had been no abandonment of these children by the mother, and yet on the other hand decide that it was to the best interests of the child that she remain with the petitioners. The trial judge, not being able to accomplish that by adoption, with the conclusion that there had been no abandonment, provided for the child to remain with the petitioners through a dependency proceeding on his own motion. Undoubtedly the trial judge is fully cognizant of what is best for this child and will require a marked change in the conduct and habits of the parents before a modification of the dependency order will be granted.

The trial judge having heard and seen these witnesses as they testified to conflicting facts, had a better opportunity to evaluate the testimony, and this court will not disturb his ruling. The judgment of the county court of Macon county is affirmed.

*Affirmed.*