IN RE ADOPTION OF ANGELIA KAY MÖRIARTY and JULIE KAY MORIARTY.

No. 52605.

(Reported in 152 N.W.2d 218)

JULY 11, 1967.

REHEARING DENIED AUGUST 30, 1967.

Bernard L. Willis, of Lake City, for resister-appellant.

Jack H. Bedell, of Spirit Lake, for petitioners-appellees.

MOORE, J.—This is an adoption proceeding involving Angelia Kay and Julie Kay Moriarty, minor children of David D. Moriarty and Jayne R. Moriarty, now Postlethwait. The father and mother were divorced and exclusive care, custody and control of the two children was given to the father. The mother was granted reasonable rights of visitation. About two years later the father's brother, George P. Moriarty, and wife, Mary J., filed a petition for adoption of the two children. A verified consent by the natural father was attached thereto. The mother's whereabouts was then unknown to petitioners. Later she was located and given notice. She appeared in person and by her counsel at the hearing and resisted the adoption following which a decree of adoption was entered granting petitioners the rights of adoptive parents. The natural mother has appealed. We affirm.

The natural father of Angelia Kay, born December 21, 1961, and Julie Kay, born June 9, 1963, was granted a divorce from the natural mother on September 21, 1964, in the District Court in and for Calhoun County, Iowa. The father was then a mem-

1282

ber of the United States Armed Forces. He was still so engaged at trial time in the case at bar. The natural mother appeared and was represented by counsel. She consented to the provisions of the divorce decree which included: "IT IS FURTHER ORDERED that the plaintiff David D. Moriarty, is hereby given the exclusive care, custody and control of the children of this marriage, Angelia Kay Moriarty and Julie Kay Moriarty, and that the defendant, Jayne R. Moriarty, shall have reasonable rights of visitation with said children at all reasonable times and places."

Following divorce the father placed the two children in the home of his parents at Rockwell City and returned to service. The natural mother soon thereafter left Iowa. The children remained in the grandparents' home until August 1966 when because of ill health the grandmother was unable to continue caring for them.

After some conference the children, with the father's consent, were placed in the care of the brother, George P. Moriarty, and wife at Lake Park, Dickinson County, where they have remained. This was done with an understanding the two children would become members of the George P. Moriarty family and would be adopted.

On September 22, 1966, this petition for adoption of the two girls, then age three and five, was filed in Dickinson County. Attached thereto was the natural father's consent and his request the adoption be granted. It contained no consent or notice to the natural mother. On the same date the Dickinson District Court entered a decree of adoption.

After learning the natural mother's address, petitioners obtained a reopening of the adoption proceedings for the purpose of giving her notice and setting a hearing on their adoption petition.

The natural mother, now resister-appellant, first filed a motion to dismiss the adoption proceedings on the ground her consent was required. The trial court overruled this motion.

She then filed an answer denying generally the allegations of the petition for adoption and alleging her consent was required, the best interests of the children would not be served by the adoption and that she had filed an application in the Calhoun

District Court asking the divorce decree be modified and that she be granted custody of the children. She further alleged the court was without jurisdiction to hear and determine the adoption proceeding.

Petitioners' reply denied the affirmative allegations of resister's answer and alleged they had filed a special appearance in the Calhoun District Court.

The case at bar was tried and submitted to the trial court on December 12, 1966. The resister appeared, testified and was represented by her present counsel. Nothing further was filed or done until the trial court on January 9, 1967, filed detailed findings of fact, conclusions of law and entered a decree granting the adoption. Resister-appellant filed notice of appeal on January 11, 1967.

She assigns two propositions for reversal, (1) the trial court erred in ruling her consent was not required and (2) the trial court abused its discretion in determining the best interests of the children would be served in granting the adoption with the knowledge a custody hearing was pending in Calhoun County.

The evidence submitted to the trial court establishes no real factual disputes. David D. Moriarty, the natural father, related the facts which we have already set out regarding the marriage, birth of the children, the divorce decree, the care of the children and his placing them in the home of petitioners. He testified the children were happy and well cared for in petitioners' home and requested the adoption be granted. He testified he learned a week previously his ex-wife had remarried and was living in Jefferson, Iowa. Over petitioners' objections he testified on cross-examination he had attended a custody hearing with reference to the children in Calhoun District Court on December 5, 1966, and heard testimony the resister would make a good mother for the children.

Petitioner, George P. Moriarty, testified he was 29 and his wife 30 years of age, they have four daughters, 12, 11, 4 and 2 years of age, a son, age 8, he earned in excess of ten thousand dollars a year as assistant manager of a grain and fertilizer company, he was carrying insurance to help finance the future

education of the children, including the two subject children, all attend church every Sunday, the two children are treated like their own, the two children are healthy, happy and fit perfectly into the family. He stated the subject children call him father and his wife mother and often expressed and showed love and affection. On cross-examination he expressed his awareness of the responsibility and expense of rearing and educating the children and his willingness to assume this burden. He stated he first learned the natural mother was attempting to get custody of the children when two notices of hearing were received in the mail. He further testified he had filed a special appearance which had not been ruled on. He was not aware of the natural mother's whereabouts or her remarriage until after the adoption petition was filed.

The other petitioner, Mary J. Moriarty, gave substantially the same testimony. She testified she was capable of expending the energy necessary to be a mother of seven and there were no disciplinary problems with the children.

Hope McCown, Director of Dickinson County Department of Social Welfare, testified in great detail of her investigation of the petitioners' home, reputation, finances and the care being given the children. She had called at petitioners' house without advance notice, found a large clean, adequate home, a bed for each child and happy, well disciplined children. Her investigation included interviews with the family doctor, county sheriff and a member of the board of supervisors. All spoke highly of petitioners, their home, reputation and family life. She reported the home was suitable and recommended the adoption be granted.

The natural mother, resister-appellant here, testified the divorce decree was entered with her full knowledge and consent, thereafter she went to Texas where she worked as a waitress, she married Mr. Postlethwait on February 27, 1966, and then moved to Jefferson, Iowa, where her husband was employed at the Greene County Rural Electric Coop Company. She testified they moved to Iowa intending to gain custody of her two daughters. She had visited them in the grandmother's home six or eight times. She testified she was able to furnish the children a good

home, be a good mother, continue the children's religious faith and teaching and her husband was willing to do the same.

Fern Cripe, resister-appellant's mother and grandmother of the two subject children, testified she had lived in Rockwell City for seven years, at the time of the divorce Jayne was young and immature and although David was in the military service she thought the order placing the children in his custody was a good order and for the best interest of the children. She stated since February Jayne and her husband had moved to Iowa, Jayne had matured and wanted desperately to have custody of and rear her two children. Mrs. Cripe expressed the opinion her daughter and husband would be very good parents.

This we believe is a fair summary of the records submitted to the trial court which we must review on this appeal. As we shall point out infra the printed record and the briefs and arguments refer to several matters and records in the Calhoun District Court which were not brought to the attention of the trial court in the case at bar or raised as issues in the lower court.

I. This adoption proceeding is governed by equitable rules and is here triable de novo. Burrell v. Burrell, 256 Iowa 490, 493, 127 N.W.2d 78, 80. This requires a review of the evidence and a consideration of the question of the best interest of the children. In re Adoption of Perkins, 242 Iowa 1374, 1378, 1379, 49 N.W.2d 248, 250, and citations. In equity cases, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court but are not bound by them. Citation of authority is unnecessary. Rule 344(f)(7), Rules of Civil Procedure.

II. Adoptions and the procedure therefor are statutory and are found in chapter 600, Code of 1966. Section 600.3, omitting immaterial parts, provides: "* * * The consent of both parents shall be given to such adoption * * * unless the parents are not married to each other * * * or unless one or both of the parents have been deprived of the custody of the child by judicial procedure because of unfitness to be its guardian. If not married to each other, the parent having the care and providing for the wants of the child may give consent. * * *."

It is essential we look to the statutes to determine the procedure to be followed. A failure to follow them in any material respect is fatal to the power of the court to decree an adoption. Welfare of the child alone is not sufficient ground for an adoption. There must be compliance with the statutory requirements pertaining to consent before the question of the best interests of the child is reached. In re Adoption of a Baby Girl, 248 Iowa 619, 623, 624, 80 N.W.2d 500, 503.

Resister-appellant argues her consent to adoption of her two daughters was necessary before the trial court could consider granting the adoption. Under the particular facts and her restricted rights under the divorce decree we are unable to agree. Construction of Code section 600.3 has been given in many of our opinions as to when a divorced parent's consent to an adoption is or is not required. They are reviewed rather extensively in Burrell v. Burrell, supra, 256 Iowa 490, 497 et seq., 127 N.W.2d 78, 82, 83, which need not be repeated here.

The rule is now well established that mere right of visitation is not enough to require consent of a divorced parent. In re Adoption of Alley, 234 Iowa 931, 934, 14 N.W.2d 742, 745; In re Adoption of Karns, 236 Iowa 932, 935, 20 N.W.2d 474, 476; In re Adoption of Chinn, 238 Iowa 4, 10, 11, 25 N.W.2d 735, 738.

Judge Harvey Uhlenhopp, of the Eleventh Judicial District, in his comprehensive study of the law of Adoption in Iowa, 40 Iowa Law Review 228, in considering when consent is necessary at page 245 says: "In divided custody cases the consent of both parents appears necessary, for each parent has substantial care and provides materially for the child's wants. *But mere rights of visitation are not enough.*" (Emphasis added.) See also annotation, 47 A. L. R.2d 824, section 4.

Resister-appellant's right of visitation without any showing she materially provided for the children was not such as to require her consent to the adoption.

III. Resister-appellant's answer raises some question of jurisdiction of the Dickinson District Court as the divorce was granted in Calhoun District Court where she filed and had pend-

ing an application to modify the child custody provision. Her application was filed subsequent to the adoption petition.

"Adoption does change the status of a child and may affect incidents of a divorce decree involving parental duties and privileges. But where the conditions and circumstances prescribed by chapter 600 as warranting adoption are shown to exist, the fact that the adoption may affect certain incidents of a prior divorce decree is not a bar to such adoption. * * * [T]he fact that a child is under the jurisdiction of a court in divorce proceedings between its parents does not prevent even another court from having jurisdiction of the same child for its adoption on the consent of the parent to whose custody it has been given." (Citations) In re Adoption of Chinn, supra, 238 Iowa 4, 9, 25 N.W.2d 735, 738. See also In re Adoption of Ellis, 260 Iowa 508, 149 N.W.2d 804, 808.

In In re Adoption of Alley, supra, 234 Iowa 931, 936, 937, 14 N.W.2d 742, 745, we say: "Defendant suggests that the terms of the divorce decree regarding care of the children may be changed, * * *. It is sufficient response to this contention that we have uniformly held a divorce decree is final and conclusive until such a change is made and the possibility of future changes in the decree does not affect the parties' status under the decree. Walters v. Walters, 231 Iowa 1267, 1270, 3 N.W.2d 595, 596, and citations; Newburn v. Newburn, 210 Iowa 639, 641, 231 N.W. 389, and citations."

The record before the trial court in the case at bar shows no more than a possibility of a future change of the decree entered in Calhoun District Court. We hold the Dickinson District Court had jurisdiction in the adoption proceeding.

IV. Resister-appellant's next attack is entirely outside the record made before the trial court. The printed record and the briefs and arguments refer to a modification order made by the Calhoun District Court granting Jayne custody of the children after submission of the case at bar but before entry of the decree of adoption. Reference is also made to entry of default against petitioners and an order after entry of the adoption decree setting aside the default due to the Calhoun District Court's

oversight of their special appearance. The order modifying the divorce decree between the natural parents was allowed to stand.

We would no doubt be faced with additional problems as the result of the orders made by the Calhoun District Court if at anytime they had been called to the attention of the trial court in the case at bar. Resister-appellant must rely on the record made in the trial court.

■ This court has held so many times a question not presented to and not passed upon by the trial court cannot be raised or reviewed on appeal that citation of decisions is unnecessary. See, however, In re Adoption of Karns, supra, 236 Iowa 932, 938, 20 N.W.2d 474, 477; Bryan v. Iowa State Highway Commission, 251 Iowa 1093, 1096, 104 N.W.2d 562, 563; Mundy v. Olds, 254 Iowa 1095, 1100, 120 N.W.2d 469, 472; Associates Discount Corp. v. Held, 255 Iowa 680, 684, 123 N.W.2d 869, 871; Verschoor v. Miller, 259 Iowa 170, 143 N.W.2d 385, 389. Accordingly we decline to consider contentions made by resister-appellant for the first time in this court.

■ V. The record is completely devoid of any statement derogatory to petitioners. The evidence establishes without dispute Angelia Kay and Julie Kay are happy, healthy, well adjusted children in petitioners' home. They are considered and treated like the other children. They have security for the first time.

Resister-appellant appeared and without any objection submitted the issues of the adoption proceeding to the trial court. No motions were made asking a delay or reconsideration of a decision on the merits. The trial court had no alternative other than decide the issues submitted.

We are not unmindful of the natural mother's desire to regain custody of her two daughters and to care for them in her newly established home but after careful review of the record we conclude the trial court's decree should be affirmed.— Affirmed.

GARFIELD, C. J., and LARSON, SNELL and RAWLINGS, JJ., concur.

BECKER, STUART and MASON, JJ., dissent.

Becker, J.—I dissent.

I. The first problem in a contested adoption is that of statutory construction. Here the majority reaches the conclusion that consent of the noncustodial parent is not necessary. I agree with the result of that facet of the case but do so because I suggest that the noncustodial parent should rarely, if ever, have an absolute right to veto a proposed adoption. See comment, Consent in Adoption in Iowa, 33 Iowa Law Review, pages 678, 685: "The power of an absolute veto of an adoption petition by a parent should be recognized only under extraordinary circumstances, for to allow such a power in many cases might prevent the court from providing for the best interests of the child. Problems arising from divorce and family settlements cannot be solved by iron-clad rules of law, because one party is often motivated only by the desire to injure the other party. An absolute veto might be a means by which a vengeful parent could obstruct a normal family readjustment. Where the court is given broad general powers to provide for the best interests of the child, this acute problem is avoided."

II. The article referred to above starts with this observation: "Since an adoption proceeding affects the numerous, and often opposing, interests of (1) the child in question, (2) the child's natural parents, (3) the adoptive parents, (4) the community in which the child is domiciled, and (5) the community in which it is proposed that the child be domiciled, it seems not only desirable but necessary that consideration be given to all of these interests, both singly and cumulatively, before final disposition of the adoption proceeding."

In prior adoption cases we have given little recognition to any factor other than presence or absence of power to consent and, at times, what is to the best interest of the child. In this way adoption rules have been closely tied to the rules used in child custody cases. Yet they are not the same. The 33 Iowa Law Review comment succinctly covers that matter at page 681 as follows:

"Whereas an order awarding custody is always subject to review and possible change, adoption effectuates a permanent change of status. This factor alone necessitates that a proceeding

in adoption should be approached with the utmost caution. The creation of an artificial family by adoption should be a final alignment of the various interests involved, eliminating the necessity for further action. The effect of the decisions in Iowa has been to disregard the distinctions between custody and adoption by treating the award of custody in the divorce action as the basis for adoption, making custody practically absolute and irrevocable. To treat custody as an absolute right is to proceed on what Professor Sayre has labelled the ' "Property" theory of custody (in the sense that custody is regarded as a fixed and complete body of rights and duties to be transferred like ownership of a hog . . .).'· He concludes that 'The transfer of custody in divorce cases as in other cases should not irrevocably take all the rights and duties from the parent . . .' Custody being subject to rehearing at anytime, it is essentially an error to base the permanent relationship of adoption on the temporary arrangement of custody alone. Furthermore, the factors governing the award of custody may differ from those involved in a proceeding for adoption. Custody is normally based solely on consideration of the 'best interests of the child.' As has already been pointed out, satisfactory adoption proceedings must be based on a number of often-conflicting interests, in which the immediate 'best interests of the child,' while of great importance, are not the sole consideration. In many instances, the award of custody to one parent is not based on a judicial comparison of the past parental records of the husband and wife, as custody based on such a determination would not necessarily promote the best interests of the child."

A review of some of our more recent consent cases indicates the tenuous grounds on which adoption cases have been decided where presence or absence of necessity for consent was considered the controlling factor.

In Rubendall v. Bisterfelt (1940), 227 Iowa 1388, 1391, 291 N.W. 401, this court observed: "No extended consideration of the adoptive and custodial rights of parents is here necessary. It may be noted that although these rights are regarded as being separate and distinct they are closely interrelated and at times appear to blend into each other. However, the issue in this case

was limited to the legality of the adoption and the conclusions reached should not be construed as modifying the custodial or any other provisions of the divorce decree."

In that case an adoption was accomplished without the consent of the father who had been given visitation rights and ordered to pay $10 per month by the terms of the prior divorce decree. The consenting mother had been given the custody and control of the child in the divorce decree. Under this statutory interpretation we did not reach the important question in child custody cases; i.e., the best interest of the child. It simply held that consent was a *sine qua non* to adoption, and, the consent being withheld, the adoption was void.

In re Adoption of Alley, 234 Iowa 931, 14 N.W.2d 742, also approached the same type case as a statutory interpretation problem but to a different result. The distinction made was that the husband was not ordered to support the children and the mother was given "absolute care, custody and control of the children", and no right of visitation was reserved. As the dissent noted, the court ignored the fact that the father's interest in real estate had been appropriated to support the children and that the father was in a mental health institution at the time of the divorce. The best interest of the child standard was never reached, the matter was returned to the trial court for determination as to whether an adoption should be granted.

In re Adoption of Karns, 236 Iowa 932, 20 N.W.2d 474, relied on the Alley case and approved an adoption consented to by the mother without notice to or consent by the father. In that case the child was born after the divorce, the father was in the service but got an emergency furlough to return to offer to help when he found that his former wife was pregnant. He offered an allotment. All help was refused and the allotment checks were returned. The court concluded that notice to or consent of the father was unnecessary under the statute and bolstered the opinion by recitation of the good home the adoptive grandparents were providing plus the statement that welfare of the child is ordinarily a controlling consideration in cases of this kind. For this additional pronouncement (in light of the cases previously discussed) the court cites Lancey v. Shelley,

232 Iowa 178, 2 N.W.2d 781, and Paulson v. Windelow, 236 Iowa 1011, 20 N.W.2d 470, both Habeas Corpus-Child Custody Cases. The American Jurisprudence citation is also taken from a section on Parent and Child entitled, Principles Governing Judicial Award of Custody. Thus statutory interpretation was not the sole grounds upon which this court relied and identification of adoption with child custody was recognized. As in the Alley case, the fact that the father was severely handicapped by events beyond his control was ignored.

But In re Adoption of Chinn, 238 Iowa 4, 25 N.W.2d 735, reached the conclusion that where one spouse received the "custody of the minor child" and no support is ordered, but visitation rights are provided, the consent of the other non-custody spouse is unnecessary to adoption. "The rights given the father to visit the child and to take her to his home for one week in each three months did not give him the care of the child within the meaning of the statute." Nothing is said about the "best interest" rule, the case was remanded for hearing on the adoption.

In re Adoption of Perkins, 242 Iowa 1374, 1379, 49 N.W.2d 248, uses the "best interest" rule, albeit, it refuses adoption. There the father of two boys had stopped making support payments as provided in the decree by reason of the wife's re-marriage. The court said:

"The record shows that one of the children involved is now thirteen years of age, the other approximately ten. Both are boys. There is some evidence relative to drinking by all three adult parties concerned in this case. The divorce decree gave the custody to the mother with the father having rights of visitation. The question which we must determine at this point is whether it will be for the best interest of these boys if the adoption be permitted, in which case they will certainly be denied all association with their father; or whether the disadvantages of such a course outweigh the advantages and the adoption should be denied. We are not at this juncture concerned with whether the consent of the father is required; nor, as both the trial court and the appellee seem to think, with a question of custody as between the mother and the father. Admitting, for the purpose

of argument, that the consent of the father is not essential, yet we are still confronted with the problem of what is for the best interest of the children. We have concluded that the welfare of the boys here involved will be best served if the adoption is denied."

We also said at page 1380: "[T]he right of visitation in itself is not enough to require the refusal of a petition for adoption, yet we think that the fact that such right will be eliminated by an adoption decree is a proper consideration when we are approaching the problem from the standpoint of the welfare of the children." There were dissents to several of the foregoing cases but this case drew a special concurrence and two dissents.

The most recent case on this subject is Burrell v. Burrell, 256 Iowa 490, 127 N.W.2d 78. There the noncustody father stopped child support payment to the mother by agreement. Thereafter the mother's second husband petitioned for adoption. We held that the agreement was not permanent, that the trial court properly ordered the payments started anew and gave the father the right to veto the adoption. Again we said that we need not reach the arguments re the child's welfare. We there recognized a rule that is too often brushed aside in these cases. "In our recent case of Willey v. Willey, 253 Iowa 1294, 1302, 115 N.W.2d 833, it is said: 'The rule is well established in all jurisdictions that the right of access to one's child should not be denied unless the court is convinced such visitations are detrimental to the best interests of the child. In the absence of extraordinary circumstances a parent should not be denied the right of visitation. It is a right which, unless specifically denied by the court, can be enforced by right of habeas corpus.' "

Thus it would appear we have evolved to the position that if material contribution is being made the contributing noncustody parent has a right of veto. If no contribution is found that satisfies this court the custody parent is practically given *carte blanche* to arrange an adoption. As noted by Judge Harvey Uhlenhopp in his article Adoption in Iowa, 40 Iowa Law Review, 228, 245: "In the actual contests the question is usually whether the parent out of custody is 'materially providing' for the child. Refined distinctions have developed on this point.

The trend here is away from the veto, although some judges remonstrate bitterly. The decisions constitute tacit recognition of the present-day breakdown in family ties." One can only add that "refined distinctions" are singularly inappropriate in this field of law and human relations, and that the struggle should be to preserve what is left of family ties.

III. The public and the parents do have some rights that should be recognized and protected. It is not right to brush aside these rights with the cavalier statement that recognition of them is an "exercise of dubious Mendelism, labeled 'natural right' ". 1 Family Law Quarterly 3, 8. Nor is it proper to completely ignore the public policy of this state as announced by the legislature. Iowa Code, 1966, provides: "633.3(19) Guardian— the person appointed by the court to have the custody of the person of the ward under the provisions of this Code." and "633.559 Preference as to appointment. The parents of a minor, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian. * * *." Here, it seems to me, we give that statute something less than lip service.

Further it is submitted that the tenuous distinctions set up by our "consent" cases do not approach evenhanded justice. To say that a father has veto power because he was awarded visitation rights and ordered to pay $10 a month child support but a mother cannot preserve her visitation rights because she was not ordered to pay toward the child support, is to clearly discriminate. We know that the primary breadwinner is usually the man. In the comparatively rare case when the man gets custody the woman is seldom ordered to contribute to support. Yet we consciously set up the situation where the man, if he complies with the decree, (however innocuous the financial burden) is protected with a veto power but the woman, *even* though she complies with the decree (and evidences her interest and love by visits to the children) can summarily be stripped of the few rights left *and also of all hope for the future*. Should payment of the princely sum of $10 per month as in Rubendall v. Bisterfelt, supra, make this big a difference? If a man keeps up the payment but never visits the children, is he in a better position than the woman who cannot pay but frequently visits?

He is by our standards. Is $10 a month (or $100 a month) more important than demonstrated love and affection? It is by our standards.

In answer to this it might be said that the mother usually gets custody of the child and the law recognizes that she is usually best able to care for the child. Andreesen v. Andreesen, 252 Iowa 1152, 110 N.W.2d 275; Patzner v. Patzner, 250 Iowa 155, 93 N.W.2d 55. Thus ordinarily the mother is denied custody only when she is unfit at the time of divorce. Patzner v. Patzner, supra. These observations have some validity. Yet we often have situations where the mother's unfitness at time of divorce is beyond her control due to youth, mental instability, illness, or other factors. When such factors have been removed, the mother has been able to regain custody in specific cases. McKay v. McKay, 253 Iowa 1047, 115 N.W.2d 151; Willey v. Willey, 253 Iowa 1294, 115 N.W.2d 833; Vanden Heuvel v. Vanden Heuvel, 254 Iowa 1391, 121 N.W.2d 216; Wood v. Wood, 220 Iowa 441, 262 N.W. 773. There are a substantial number of cases where the mother sought and obtained custody at a later date when the cause of her unfitness had been removed. In nearly every one of the child custody cases where the mother was denied custody her right to visitation was carefully preserved. See Willey v. Willey and Andreesen v. Andreesen, both supra; Alingh v. Alingh, 259 Iowa 219, 144 N.W.2d 134. But if there has been a completed adoption no right to visitation is allowed. Watt v. Dunn, 236 Iowa 67, 17 N.W.2d 811.

Adoption forecloses the right to seek custody, the right to visitation, the right to show rehabilitation, the right to be interested in natural children. It effectively divorces parent from child. As to the mother this will usually occur simply because she is not contributing *money* to the children's support. As observed in the article Adoption in Iowa, supra: "Taking away the veto for lack of child support following the divorce decree is not the complete answer either. A mother out of custody may barely be able to support herself; and unemployment or disability may make support payments impossible."

IV. This type of discriminatory result goes to the very heart of the difference between child custody and adoption prob-

lems. One strips the parents of one facet of parenthood; the other strips the parents of all rights in relation to the child. The latter action should require a much stronger showing that the best interest of the child compels such action (as against other competing legitimate considerations) before adoption is ordered over the protest of the natural parent. See also 40 Iowa Law Review, 228, 244, Footnote 75: "Adoption cases continually evidence the influence of doctrine from custody cases. Yet adoption achieves something much more drastic. See Jackson v. Russell, 342 Ill. App. 637, 639, 97 N.E.2d 584, 585 (1951)."

As noted at the beginning of this dissent, noncustody parents should rarely, if ever, have a veto power in adoption cases, but no adoption should be granted over the objection of non-custody parent unless the welfare of the child urgently requires such action and the evidence convincingly shows such to be the case, or unless there has been abandonment, waiver or forfeiture (see Rubendall v. Bisterfelt, supra), or judicial determination of unfitness, as set forth in Code, 1966, section 600.3.

In the instant case the mother was 15 when she was married and 18 when the divorce occurred. Everyone seems to agree that at that time she was in no position to rear the children or support them. But does this mean she should be deprived of all rights in this summary fashion? There is no evidence that she has forfeited her rights or waived them. She is not shown to be morally unfit or economically unable to seek custody, much less preserve her parental rights of visitation. Nor is it shown that custody alone, without adoption, will not be to the best interest of these two children.

There was no problem at time of trial of long continued *de facto* custody in the prospective adoptive parents. Petitioners only had the children one month before starting adoption proceedings and four months before actual trial. In that connection the adoptive father's statement that the children called him "Dad", his wife "Mother", and their father "Uncle" does not carry the usual weight.

It is not suggested that custody rights should be here determined. We do not have the record for it. But adoption should not be approved in such fashion as to strip a parent who, on the

record is innocent of wrongdoing, from all parental rights simply because the couple having *de facto* custody insist on adoption.

The result here is additionally unfair because the father whose parental burden has been carried by his mother will still retain his family contacts with the children while the mother is effectively locked out of the family circle.

Custody problems in this case should be left to the divorce court where the matter is currently being litigated and those problems should be separately determined. I would reverse.

STUART and MASON, JJ., join in this dissent.