**In the Interest of J.M.W. and T.R.W., Minor Children, P.B., Appellee,**

**R.W. and H.W., Intervenors–Appellants.**

**In the Interest of J.M.W. and T.R.W., Minor Children,**

**S.A.W. and P.C.A., Appellees,**

**B.B. and A.B., Intervenors–Appellees.**

**No. 91–1790.**

Supreme Court of Iowa.

Nov. 25, 1992.

John Otto of Otto, Lorence & Barry, Atlantic, for appellants.

John M. Trewet and J.C. Van Ginkel of Kluever, Van Ginkel & Trewet, Atlantic, for appellees.

Curtis J. Heithoff of Pratt & Heithoff, Council Bluffs, for guardian ad litem.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

We have accepted for further review the decision of the court of appeals in this dispute over the adoption of twin infant children. The district court approved a proposed adoptive placement initiated by the children's mother and opposed by the maternal grandparents of the children. The court of appeals reversed and approved placement of the children with the maternal grandparents in anticipation that the grandparents would ultimately be permitted to adopt the children. Upon reviewing the record and hearing the arguments presented, we vacate the decision of the court of appeals and affirm the judgment of the district court.

The issues concern placement of the children for adoption after the termination of the parental rights of their natural parents. The contesting parties are R.W. and H.W., the parents of the children's natural mother, and B.B. and A.B., with whom the children had initially been placed pursuant to a proposed independent adoption placement. The contesting parties are intervenors in a termination of parental rights action involving the children's natural parents. The petition for termination of parental rights and the issues surrounding the proposed adoption and resistance thereto were considered together by the district court and decided in a single decision.

The significant facts and prior judicial proceedings in this matter include the following. J.M.W. and T.R.W. are twins born on February 22, 1991. Their mother was then age nineteen and unmarried. For approximately three months following the birth, she and the children resided with her parents, intervenors R.W. and H.W. During this three-month period, an attempt to

arrange a private adoption of the children by a couple living in New Jersey was unsuccessful.

On or about May 21, 1991, attorney P.A. (acting at the behest of proposed adoptive parents) arranged an independent adoption placement of the children with intervenors B.B. and A.B. The children's mother executed a release of custody. It was contemplated by her that attorney P.A. would obtain a court order appointing himself as custodian of the children. It was further contemplated that this order would also approve placement of the children in the home of B.B. and A.B. for purposes of adoption. Attorney P.A. was also entrusted with the task of pursuing an action to terminate the parental rights of the mother and the putative father, P.B.

In contemplation of the proposed independent placement, B.B. and A.B. did take custody of the children on or about May 21. However, after nearly a month had passed, no order had been obtained naming P.A. as custodian and no petition for termination of parental rights had been filed. The first action taken in court with respect to this matter was a petition by the children's putative father, P.B., to have the mother's parental rights terminated. The putative father requested that the children be delivered to him. It appears without dispute, however, that P.B. was acting in cooperation with the maternal grandparents, R.W. and H.W., who wished to block adoption of the children by B.B. and A.B. and, ultimately, to adopt them themselves.[1] P.B.'s initial request that the children be placed with him was subsequently amended to ask that they be placed with R.W. and H.W.

The filing of P.B.'s action apparently prompted attorney P.A. to finally take some action with respect to B.B. and A.B.'s efforts to adopt the children. On June 20, he obtained an order appointing himself as custodian for the children and approving their placement for adoption with B.B. and A.B.

The proceedings were further complicated when the natural mother of the children commenced an action in which she claimed that her initial determination that P.B. was the father of J.M.W. and T.R.W. was incorrect. She alleged that in fact their father was T.F. On this basis, she challenged P.B.'s standing to bring the pending termination of parental rights action against her. She sought a judicial determination of paternity of the children and a termination of parental rights of their natural father.

Faced with this multitude of claims, the district court temporarily removed the children from the care of B.B. and A.B. It appointed J.O., the attorney who had been representing the putative father and maternal grandparents, as custodian of the children in place of P.A. On July 22, the court temporarily placed the children in the home of intervenors R.W. and H.W., where they had resided for the first three months following birth. In so doing, the court expressly stated:

> [T]his placement is temporary and shall continue until resolution of the instant case—the action to terminate the parental rights of [the children's mother]. This placement is made without prejudice to any attempt by [B.B. and A.B.] to ultimately become the adoptive parents of the children in interest. The placement shall be reviewed after the outcome of the paternity action initiated by [the children's mother] has been determined. The placement shall be reviewed after the resolution of this pending action to terminate the parental rights of [the children's mother].

On August 24, 1991, P.B. completely altered his prior position with respect to the placement of the children. He executed, on that date, a release of custody in compliance with Iowa Code section 600A.4 (1989). He also executed a voluntary consent to the termination of his parental rights as to J.M.W. and T.R.W. and expressed the wish that they be placed with B.B. and A.B. for adoption. Shortly thereafter, T.F., the other putative father of the children, ex-

---

1. Prior to the filing of P.B.'s action to terminate the mother's rights, the attorney representing P.B. prepared an application seeking court au-

thority to simultaneously represent the interests of P.B. and of R.W. and H.W., who intended to and did intervene in P.B.'s action.

pressed a willingness to voluntarily relinquish his parental rights as to the children. The case then proceeded to final hearing without having had a judicial determination made as to the paternity of the twins.

At the final hearing, the district court had before it written releases of custody and voluntary relinquishments of parental rights on behalf of the children's mother and by P.B. T.F. appeared at the hearing and, in open court, voluntarily relinquished any parental rights to the children. The court found that either P.B. or T.F. was the father of the children and terminated the parental rights of both. It also terminated the parental rights of the natural mother.

On the issue of placement of the children, evidence was received from each set of intervenors competing for placement, from the children's mother; the mother's personal physician; the putative father, P.B.; social workers; friends; and relatives. The evidence established that the maternal grandparents, R.W. and H.W., are each forty-nine years of age. They have five adult children, only one of whom completed high school. The mother of the twins and another unmarried daughter of R.W. and H.W. dropped out of high school at or about the time of giving birth to a child.[2] These grandparents have the financial ability to rear the children. A home study by a social worker resulted in a satisfactory recommendation for placement of the children in their home.

B.B. and A.B. are thirty-seven and thirty-four years of age, respectively. They have a three-year-old adopted daughter. B.B. is employed as a sales representative for Dow–Elanco. His wife, A.B., is a full-time mother and homemaker. Both B.B. and A.B. have college educations. They have the financial ability to rear the children. Their home was also given a satisfactory rating in a home study by a social worker.

Upon reviewing the evidence, the district court found and concluded:

The Court is impressed with the enthusiasm and general situation concerning [B.B. and A.B.]. They are younger than [R.W. and H.W.], closer to the age most common for child rearing, and have another young child of their own who would be raised with the twins. [R.W. and H.W.] have raised a family and were it not for their blood relationship with these children, the Court would hesitate to consider them for an adoptive placement. This is not to say that they lack the qualities appropriate for adoption other than their age. The Court recognizes that [R.W. and H.W.] in seeking adoption of the twins may hold the belief that ultimately their daughter ... might develop a relationship with her children. That may or may not be the case....

....

Upon consideration of all of the evidence, the Court concludes that the best interests of [J.M.W.] and [T.R.W.] would be served by their placement with [B.B. and A.B.] for adoption and the naming of [P.A.] as custodian of the children for that purpose.

In reversing the district court's findings, the court of appeals declined to apply a presumption in favor of family members. It nevertheless concluded as follows:

[W]e recognize the grandparent-grandchild relationship is a very important, though not determinative, factor to be considered in [this] analysis.... We believe it is generally in children's best interests to be kept within their families. It is desirable for children to maintain an identity with their natural families.

In our de novo analysis of which placement would be in the twins' best interest, we afford greater weight to the blood relationship between the twins and their maternal grandparents than we do to the differences in the prospective parents' ages.

(Citations omitted.)

■■■ The court of appeals review in this adoption dispute was de novo, as is the review by this court. *See In re Gustafson*, 240 N.W.2d 674, 676 (Iowa 1976). In exercising that review, we are convinced that

2. The natural mother involved in the present termination and adoption proceeding still has custody of her first child, who was fathered by T.F.

the district court's disposition was clearly more beneficial to the children, J.M.W. and T.R.W., than is that rendered by the court of appeals. Although we agree with the court of appeals that the preservation of family relationships is an important goal in attaining what is best for children born into those relationships, that factor should not be determinative in the present case.

 We do not have here, as we did in *In re Reed*, 468 N.W.2d 819 (Iowa 1991), an immediate family relationship interrupted by the sudden death of both parents. Rather, we have a termination of parental rights wherein parental disqualification was established. That circumstance substantially diminishes the role of the grandparent-grandchild relationship. We have recognized in other contexts that when the rights of natural parents are legally terminated "the rights of natural grandparents likewise end." *In re Gardiner*, 287 N.W.2d 555, 558 (Iowa 1980).

 We do not, however, rest our decision entirely on the diminution of the grandparents' "family relationship" with these children or on the grandparents' age. Even if the grandparents' blood relationship is given full recognition, the other considerations that arise from the evidence tip the scales heavily in favor of B.B. and A.B. Determination of parenting ability must necessarily be based on what is likely to occur in the future not only because of present conditions but also because of what has occurred in the past. *Stafford v. Taylor*, 158 N.W.2d 621, 624 (Iowa 1968).

 In looking to the past, we find that the circumstances surrounding the parenting of the five adult children of R.W. and H.W. does little to aid and indeed militates against their request that they be selected as parents of their daughter's young children. In looking at the present, it appears that the household of R.W. and H.W. has, in far too many instances, been the site of squabbles between themselves and their adult children, and with T.F., with whom the children's natural mother is presently living. This atmosphere is not conducive to the needs of these young twins.

Even more significant in our view is the likelihood, implicitly recognized by the district court, that the primary objective of R.W. and H.W. in this litigation is to be these children's caretakers until such time as their natural mother chooses to reassert an interest in parenting them. That would be an unacceptable gamble with the children's future.

We have thoroughly reviewed all of the evidence and the arguments of the parties and conclude that the district court correctly resolved this dispute. The decision of the court of appeals is vacated. The judgment of the district court is affirmed.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.