In the Interest of E.G., Minor Child,

State of Iowa, Appellant.

No. 06–1894.

Court of Appeals of Iowa.

July 12, 2007.

Thomas J. Miller, Attorney General, Charles Phillips, Assistant Attorney General, William E. Davis, County Attorney, and Gerda Lane, Assistant County Attorney, for appellant.

Barbara E. Maness, Davenport, for intervenor-appellee.

Angela Fritz Reyes, Davenport, guardian ad litem for minor child.

Considered by SACKETT, C.J., and HUITINK and MAHAN, JJ.

SACKETT, C.J.

The parental rights of Elijah were terminated and the Iowa Department of Human Services (Department) was named his guardian and granted his custody. The Department was in the process of placing Elijah in an adoptive home when Susan, his foster care mother, was allowed to intervene and sought his custody. The juvenile court, in a post-termination permanency order, found Elijah should remain in Susan's custody, approved Susan's adoption of him, and ordered the State to provide her with an adoption subsidy.

The State contends the juvenile court erred in (1) allowing Elijah's foster mother, Susan, to intervene, (2) overriding the Department's decision to place Elijah in an adoptive placement with parents the juvenile court found to be "highly qualified," (3) placing custody of Elijah with his foster mother, (4) approving Susan's adoption of Elijah, and (5) ordering that she be paid an adoption subsidy. We affirm in part, vacate in part and remand.

## I. SCOPE OF REVIEW.

■ Our review generally is de novo. *See In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003) (permanency order); *In re J.M.W.*, 492 N.W.2d 686, 689 (Iowa 1992) (adoption dispute); *In re Adoption of Moriarty*, 260 Iowa 1279, 1285, 152 N.W.2d 218, 221 (1967) (adoption-related equitable proceeding). We review both the facts and the law and adjudicate rights anew. *In re H.G.*, 601 N.W.2d 84, 85 (Iowa 1999). Although we give weight to the juvenile court's findings of fact, we are not bound by them. *In re N.M.*, 528 N.W.2d 94, 96 (Iowa 1995).

## II. BACKGROUND AND PROCEEDINGS.

Elijah was removed from his mother's care and in March of 2005, he was placed as a foster child in Susan's home. He has resided there since that time. In early 2006 a decision was made by the Department to seek termination and adoption. The Department began looking for an adoptive home for Elijah. In mid-February the Department interviewed the chosen family and the guardian ad litem was invited to participate in the interview. She did not participate but orally agreed to the Department's selection. Susan was told shortly thereafter an adoptive home had been selected.

Elijah's mother's parental rights were terminated in May of 2006 and his guardianship and custody was given to the Department. Susan, aware prior to the termination that the Department was seeking an adoptive home for Elijah, did not seek to intervene at the time of the termination hearing, nor had she asked to be considered for adoptive placement.

Not until July 3, 2006, did Susan file her motion to intervene. The motion was granted. Susan then filed a petition for custody, asking that Elijah continue to be placed in her home until adoption could be finalized.

The guardian ad litem for Elijah filed a request for stay of removal, contending the Department had told her that they had chosen an adoptive home other than Susan's. The guardian ad litem disagreed with the decision, being of the opinion that Susan should have the first right to adopt Elijah and if removal were not stayed the child might be moved before the next review hearing. In an ex parte order entered the next day, the court ordered that Elijah should not be moved from his cur-

rent placement until the court decided his custody.

The State subsequently filed a motion seeking reconsideration of the order granting intervention. The State also filed a motion to "reinstate" the Department's custody and guardianship contending the ex parte order stayed the Department from exercising its custodial powers on a de facto basis, temporarily relieved the Department of Elijah's custody, and stripped the Department of its powers to consent to adoption without notice or hearing. After a contested hearing, the court denied both of the State's motions.

The State then filed a motion to dismiss Susan's petition for custody, contending the Department had been appointed guardian and custodian and Susan only sought custody. The State argued that Susan wanted the Department to retain guardianship in name only for the purpose of receiving subsidized adoption funds when the Department no longer had the power of a guardian to choose the adoptive parent or the foster placement—rather this right had been transferred to the juvenile court. The State argued, among other things, that federal foster care maintenance funds are not available when a court orders a specific foster care provider, and because it appears that Susan will be seeking federal adoption subsidy funds, it is unclear if that would be lawful in accordance with federal rules and regulations if the Department does not have real guardianship.

A hearing was held and the juvenile court filed an order finding Elijah should remain in the custody of Susan. The court then approved the adoption of Elijah by Susan as in his best interest and provided the State should be obligated to provide an adoption subsidy for Elijah.

## III. INTERVENTION.

■ We first consider the Department's claim that the juvenile court abused its discretion in sustaining Susan's motion to intervene. A foster parent "may petition the court to be made a party" to juvenile proceedings. Iowa Code section 232.91(2) (2005). The statute does not, however, give a foster parent an unconditional right to intervene. The juvenile court is accorded a certain amount of discretion to deny intervention in proper cases. See In re A.G., 558 N.W.2d 400, 403 (Iowa 1997); In re B.B.M., 514 N.W.2d 425, 426 (Iowa 1994).

The State contends, among other things, that allowing Susan's intervention caused serious delay in obtaining permanent placement for Elijah and is inconsistent with the Department as Elijah's guardian seeking a placement for him.

■ By as early as March 1, 2006, Susan was advised the State was seeking termination and an adoptive home had been selected for Elijah. Susan did not at that time ask to be considered to adopt the child. She made no effort to update her home study despite being advised such an update was necessary if she were interested in adoption. She made no effort to intervene in the termination proceedings where she could have requested custody of Elijah. See Iowa Code § 232.117(3)(c). Susan's petition for intervention and custody came only after substantial efforts [1] had been made by the Department to obtain an adoptive home and Elijah was within several weeks of going to that home. However, the proceedings had not been finalized.

1. These efforts began in February of 2006 and included a selection process involving five prospective adoptive families, a series of staff-ings, and finally finding a home with special abilities to care for the child.

The fact parental rights have been terminated does not "finalize" the entire proceeding. *In re C.L.C.*, 479 N.W.2d 340, 344 (Iowa Ct.App.1991).

While the juvenile court should be reluctant to grant a foster parent's petition for intervention if it will delay a child's adoption and/or chance for permanency as it has here, we cannot say that the juvenile court abused its discretion in allowing Susan to intervene, for she has an interest in the future of Elijah, whom she had cared for during much of his young life. *See A.G.*, 558 N.W.2d at 405.

Because of our holding we need not address whether Susan's intervention at this late stage of the proceedings gave her the right to seek the relief she did.[2] We affirm the order allowing Susan to intervene.

## IV. ADOPTIVE PLACEMENT.

The State contends that the juvenile court erred in overriding the Department's decision to place Elijah in an adoptive home and providing that Elijah be adopted by Susan. While recognizing Susan has a bond with the child and has been a good foster mother, the State argues that Susan's home is not the optimum placement for Elijah in the long term. The State advances that an adoptive placement is different than a foster placement, and because an adoptive placement is long term, it must be evaluated over the long term.

The State also points out that in choosing an adoptive placement, a larger geographical area can be considered, as there is no longer a need to have the child in close proximity to his or her birth parents to facilitate reunification efforts. The State has concerns that Susan, forty-nine years old, single, unemployed, and an asthmatic who continues to smoke cigarettes has few economic resources, no savings or life insurance, and relies on food stamps, subsidized housing, and has no income other than benefits received for an adopted child in her home.

The State contends (1) the juvenile court, in making the Department guardian, gave the Department the right to "consent to adoption and to make any other decision that the parents could have made when the parent-child relation existed" and (2) that Elijah's best interest is not served in allowing Susan to adopt him. *See* Iowa Code § 232.2(21).

The juvenile court was statutorily responsible after termination of Elijah's mother's parental rights, not only for initially assigning a guardian and custodian for Elijah,[3] but also for continuing supervision and monitoring of him consistent with his best interests.[4] The Department, assigned "guardianship and custody" following the termination hearing, was charged with among other things "to make important decisions which have a permanent effect on the life and development of that child,"[5] to serve as custodian[6] as well as

---

**2.** The Safe and Timely Interstate Placement of Foster Children Act of 2006 amended 42 U.S.C. § 675(5)(G) to provide that foster parents, preadoptive parents, and relative caregivers have a "right" to be heard in any "proceeding." Pub.L. No. 109–239, § 8, 120 Stat. 513 (2006). The amendment did not change the language dealing with being made a "party" that provides, "this subparagraph *shall not be construed* to require that any foster parent, preadoptive parent, or relative providing care for the child *be made a party to*

*such a review or hearing solely on the basis of such notice and right to be heard."* 42 U.S.C. § 675(5)(G) (2006) (emphasis added).

**3.** Iowa Code § 232.117(3).

**4.** Iowa Code §§ 232.117(6)-(9).

**5.** Iowa Code § 232.2(21).

**6.** Iowa Code § 232.2(21)(c).

the authority to consent to the child's adoption,[7] and to make any other decision that the parents could have made when the parent-child relationship existed. *Id.* The Department also has the responsibility to advise the court on a regular basis of the status of the child's placement and efforts being made towards permanency and/or adoption.[8] The juvenile court carries responsibility for continued oversight.[9]

The Department remains Elijah's guardian. Susan did not seek to remove the Department as guardian nor did the juvenile court seek to do so.[10] Rather, the court made decisions that statutorily were decisions the guardian was assigned to make.

■ The legislature, while giving the juvenile court continuing oversight consistent with the best interest of the child, did not give the juvenile court the right to establish custody or consent to adoption. Rather, these rights were specifically granted to the guardian. In establishing Susan as Elijah's custodian and providing for her adoption of Elijah the juvenile court exercised authority the legislature gave to the Department as guardian.

The State argues strongly that, under these circumstances, the juvenile court does not have the authority to direct the specific adoptive home for the child. In *In re C.D.P.*, 315 N.W.2d 731, 733 (Iowa 1982), the supreme court held that in delinquency dispositions, the juvenile court picks the *type* of placement for the delinquent child but not the specific institution.

That decision is left to the child's custodian. *C.D.P.*, 315 N.W.2d at 733. The court determined that when the legislature gave the juvenile court the authority to specify the child's best interests, it granted authority to the juvenile court to direct the *type* of placement the Department was to make, but did not empower the juvenile court to direct a *specific* placement, though the court had the power to monitor the placement. *Id.*[11]

The evidence shows the Department was responsibly discharging its duties as guardian. It found an adoptive home for Elijah that the juvenile court found to be "highly qualified," a finding with which we agree. We affirm the guardianship of the Department and reverse the juvenile court's order placing the child with Susan.

We vacate the adoption order. No adoption petition has ever been filed. Iowa Code section 600.3 (2005) provides in part, "An action for the adoption of a natural person *shall* be commenced by the filing of an adoption petition." (Emphasis supplied.) Susan did not comply with this code provision.

That said, we make no determination whether the Department should consent to an adoption if/or when an adoption petition is filed. This issue, as well as who should be Elijah's adoptive parents or parent, can be put before the court if/or when an adoption petition is filed. Having vacated the adoption order we also vacate the subsidy.

---

7. Iowa Code § 232.2(21)(e).

8. Iowa Code §§ 232.117(6)-(8).

9. Iowa Code §§ 232.117(6)-(9).

10. Iowa Code § 232.118 (2005) provides the procedure for removal of a guardian, but this procedure was not utilized.

11. The court was addressing the then Iowa Code section 232.52 (1981). That section authorized the juvenile court to commit the child to "the department of social services for purposes of foster care and prescribing the type of placement which will serve the best interest of the child and the means by which the placement shall be monitored by the court." Iowa Code § 232.52.

## V. CONCLUSION.

We affirm the guardianship of the Department. We vacate the adoption order and the subsidy order and remand to the juvenile court.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**