219 N.W.2d 529 (1974)
In the Matter of the ADOPTION OF Laura Marie VOGT et al.
Robert LOVE, Appellee,
v.
Mathias J. VOGT, Appellant.
No. 56139.
Supreme Court of Iowa.
June 26, 1974.
Sheridan, Sheridan & Mellick, Ltd., Waukon, for appellant.
John A. Wibe, Lansing, for appellee.
Heard by MOORE, C.J., and MASON, REES, REYNOLDSON and McCORMICK, JJ.
REES, Justice.
These adoption proceedings involve Laura Marie Vogt, Paula Ann Vogt and Jeanine Lee Vogt, minor children of Mathias J. Vogt and Gwendelyn Vogt, now Gwendelyn Love. The mother of the children is now married to Dr. Robert Love, the petitioner for adoption in this case.
Mathias J. Vogt and Gwendelyn Parker were married on or about July 12, 1958. Mathias was then in the Air Force and continued as a career serviceman up to the time of the trial and hearing in this adoption matter. Mathias and Gwendelyn were divorced by decree of the Clarke County, Nevada, court on March 31, 1967. A separation agreement entered into between Mathias and Gwendelyn was merged in the decree of divorce under the terms of which *530 Gwendelyn had the custody of the minor children of the parties. Mathias was obligated to pay $35 per month for each child, the payments for each child terminating as the child became of age, became self-supporting or married, whichever should first occur. He was also obligated to obtain medical care and other privileges to which the children were entitled as military dependents. There seems to be no question but that the support payments were current at the time of the trial in the adoption matter.
The children were at the time of trial aged 13, 11 and 8 years. They had lived in the home of the petitioner, Dr. Robert Love, ever since his marriage to their mother which occurred on May 12, 1967, only about six weeks subsequent to the entry of the decree of the Nevada court by which Mathias and Gwendelyn were divorced.
Dr. Robert Love is a doctor of medicine engaged in general practice at Lansing. His marriage to Gwendelyn is his third, Dr. Love's first marriage having terminated in divorce, and his second terminating by the death of his wife in December of 1963. Four children were born of the second Love marriage, but at the time of the trial of the adoption matter only two remained at home, the older two having left the home to attend school.
Following the divorce, Mathias Vogt remarried, but his second wife was killed in the Rapid City, South Dakota, floods, so he was single at the time of the adoption hearing.
On the filing of the petition for adoption, notice was directed to Mathias and he filed an answer and resistance. In this answer and resistance he acknowledged that custody of the three children had been awarded to Gwendelyn, but he had been accorded "reasonable visitation rights" and the "right to have them visit him during school vacations and holidays." He asserted that he had been and still was materially providing for the wants of the three children, and that he was unwilling to give his consent to their adoption, and prayed that the petition for adoption be dismissed.
Pursuant to an order directing that investigation be conducted, the Allamakee County Department of Social Services made a study and investigation of the Love home and of the family group then living therein, and reported that the investigator had discussed the adoption with the children who expressed the desire that they be adopted by Dr. Love. The Vogt children had been using the surname "Love" ever since they came into the home at the time of their mother's marriage to Dr. Love. The Social Services Department of Allamakee County recommended the entry of a decree of adoption.
The trial court made extensive findings of fact and observed that § 600.3, The Code, provides that the parent having the care and providing for the wants of the children may give consent to their adoption. Gwendelyn's consent is a part of the record. The court further observed the right of visitation is distinguished from the responsibility for the support of a child and is not alone sufficient to give the non-custodial parent the right to veto an adoption, but that the non-custodial parent must "materially provide for the child's wants" to be entitled to any kind of veto power. In sum, trial court found that the welfare of the Vogt children required that the petition should be granted and a decree of adoption entered. From such decree, this appeal is taken.
Mathias Vogt, the natural father of the children involved in this adoption, states the following issues for review:
(a) Where the natural parents of a child sought to be adopted are divorced and the non-custodial parent has both right of visitation and responsibility for materially supporting the child, the parent having custody is not a "parent having the care and providing for the wants of the child" to the exclusion of the non-custodial parent so as to authorize the *531 child's adoption without the consent of the non-custodial parent.
(b) Dr. Robert Love, the petitioner for adoption, must comply with all statutory requirements pertaining to consent before the children's interests may be considered.
(c) The ties of the non-custodial father cannot be ignored in favor of the children's welfare.
I. Both the non-custodial parent, Mathias, and the petitioner, Dr. Love, lean heavily upon the pronouncements of this court in In re Adoption of Moriarty, 260 Iowa 1279, 152 N.W.2d 218, and In re Adoption of Clark, 183 N.W.2d 179 (Iowa 1971). In Moriarty the court decreed adoption over the strenuous objections of the non-custodial mother and this court affirmed. In Clark, the non-custodial mother objected to the adoption of five children, the trial court refused to grant objection, and we again affirmed.
A non-custodial parent, when the natural parents of a child are not married to each other, does not possess power to veto adoption simply because he is afforded visitation rights, nor does he have veto power unless he materially provides for the child's needs. In re Adoption of Clark, supra, 183 N.W.2d at 184. In re Adoption of Moriarty, supra, 260 Iowa at 1286, 152 N. W.2d at 222.
Our decision in In the Matter of the Adoption of Keithley, 206 N.W.2d 707 (Iowa 1973) was filed April 25, 1973, and was in all likelihood not available to counsel when the briefs and arguments were filed. The facts in Keithley are strikingly similar to the facts here; a non-custodial mother resisted the adoption by the stepmother, trial court granted adoption, and we reversed. At page 711 of 206 N.W.2d, we said:
"The general principles governing review of adoption proceedings are well established. Our review is de novo. In determining whether the adoption should be granted we are here required to view the evidence in the light of three competing interests, the interest of the child, the interest of the natural mother and the interest of the stepmother. See Uhlenhopp, Adoption in Iowa, 40 Iowa L. Rev., 228, 229 (1955). The welfare of the child is paramount but not the only consideration. Adoption is drastic. It is permitted only if a balancing of the competing interests shows it is wise. [citing In re Adoption of Clark, supra]."
We are forced to the conclusion in the matter before us that we need not proceed to a balancing of the interests of the Vogt children, their natural father Mathias, and the stepfather and petitioner for adoption, Dr. Love. Adoptions are statutory, and the procedure is now found in chapter 600, The Code, 1971. Section 600.3, in pertinent part, provides:
"* * * The consent of both parents shall be given to such adoption * * * unless the parents are not married to each other * * * If the relationship between a parent and a child has been terminated as provided in chapter 232 [Neglected, Dependent and Delinquent Children] or terminated under a law or court decision of another state, by final court order * * *, the consent of such parent shall not be necessary * * *. If not married to each other, the parent having the care and providing for the wants of the child may give consent."
The prospective adoptive father, Dr. Love, does not contend, nor does the mother of the children, that Mathias had been deprived of the custody of the children by any judicial procedure because of his unfitness to be their guardian.
The separation agreement, which was entered into in advance of the entry of the divorce decree between Mathias and Gwendelyn, provided for reasonable visitation rights with the children on the part of Mathias, *532 and further provided that he should have the "right to have them visit him during school vacations and holidays." It appears from the record here that while Mathias' visitations to his children have been infrequent, he has visited them as opportunity afforded. It also appears he has remembered them at Christmas, and with cards when he was stationed overseas.
The separation agreement further provided for contributions by Mathias of $35 per month for each child to continue until each child became of age, became self-supporting, or married, whichever first occurred. The separation agreement was merged by express provision in the decree of divorce, was given full effect by the divorce decree, and in regard to the children, was fully complied with by Mathias even up to time of trial in the adoption matter.
Under the circumstances, we cannot say that the mother, Gwendelyn, or Dr. Love, the stepfather of the children, provided for the wants of the children to the exclusion of their natural father, Mathias. It would appear, therefore, when the foregoing standards are applied, Mathias' consent is essential to the adoption here.
We therefore hold the decree of adoption should not have been granted. See Burrell v. Burrell, 256 Iowa 490, 127 N. W.2d 78; In re Adoption of Perkins, 242 Iowa 1374, 49 N.W.2d 248; Rubendall v. Bisterfelt, 227 Iowa 1388, 291 N.W. 401; In the Matter of the Adoption of Keithley, supra.
The decree of the trial court granting adoption in this case is, therefore, reversed.
Reversed.
All Justices concur except McCORMICK, J., who concurs specially.
McCORMICK, Justice (concurring specially).
I concur in the court's opinion. It applies the consent requirements of our adoption statute in a manner consistent with the court's prior interpretations of the statute, and I believe those interpretations are correct.
However, I regret the anomalous, inequitable and unwise double standard created by the statute. Under Code § 600.3 a non-custodial parent who provides materially for a child is given an absolute right to veto an adoption by a stepparent without regard to the best interest of the child. In all other stepparent adoption cases the non-custodial parent lacks veto power and the decisions depend on balancing the triangulation of interests involved, with paramount concern for the best interest of the child. In re Adoption of Keithley, 206 N. W.2d 707, 712 (Iowa 1973); In re Adoption of Clark, 183 N.W.2d 179, 182-184 (Iowa 1971).
This inconsistent approach cannot fairly be justified by its basis. Existence of the veto power is dictated by the economic situation of the parties and not by what is best for the child. I believe there are sufficient protections of the rights of natural parents in our law without giving a non-custodial parent the absolute right to veto a stepparent adoption because of a court-imposed support obligation. The Keithley and Clark cases are illustrative. The non-custodial parent successfully resisted adoption in those cases despite lack of veto power. Moreover, when the veto power is not involved, the court may focus upon the merits of the proposed adoption and grant it where appropriate despite resistance by the noncustodial parent. See In re Adoption of Harris, 219 N.W.2d 526 (Iowa 1974), separately filed this date.
I encourage the legislature to change the statute to eliminate the absolute power of a noncustodial parent to veto a proposed adoption by a stepparent. I do not intimate any view as to what the result should be in the present case if such veto power did not exist.