In the Matter of the ADOPTION OF Victoria Lea ZIMMERMAN, a minor, and Richard Knop, Appellant.

No. 2–57468.

Supreme Court of Iowa.

May 21, 1975.

Thomas R. Eller, Denison, for appellant.

George H. Zimmerman, pro se.

Heard by MOORE, C. J., and LeGRAND, REES, REYNOLDSON and HARRIS, JJ.

**MOORE, Chief Justice.**

Richard Knop appeals trial court's denial of his petition for adoption of Victoria Lea Zimmerman, the minor child of Evelyn Louise Knop, petitioner's wife and custodial parent of the child. We reverse and remand.

George H. Zimmerman (George) and Evelyn Louise Jones (Evelyn) were married February 23, 1963 in Nebraska. September 9, 1965 Victoria Lea Zimmerman (Victoria) was born of this marriage. George and Evelyn separated in May 1968. George left the parties' Nebraska home and went first to Colorado and then to California. January 10, 1969 Evelyn was granted a divorce in Cass County, Nebraska. The decree granted Evelyn custody of Victoria subject to George's reasonable visitation rights. George was ordered to make $50 monthly child support payments.

March 7, 1970 Evelyn married Richard Hinrich Knop (Richard). Since that date they and Victoria have lived in Ricketts, Crawford County, Iowa.

August 8, 1973 Richard filed a petition in Crawford County District Court seeking a decree of adoption of Victoria. Evelyn filed a written consent thereto. George filed answer and contested the proposed adoption. June 13, 1974 trial court entered a decree denying the petition for adoption from which Richard has appealed.

The record narrows the issue presented on appeal to the sole and difficult question whether it is wise to allow the adoption after balancing the interests of Victoria, George and Richard.

I. Trial evidence, submitted May 20, 1974, discloses that subsequent to the January 1969 divorce decree George contributed about $350 toward Victoria's support. He made his last payment two months after Evelyn's March 7, 1970 marriage to Richard. Since that time Richard and Evelyn have fully cared for and supported Victoria.

George testified he was unable to do heavy work due to 1966 back surgery. His 1972 income was $5046. His 1973 income was $3046. George remarried in 1972 and three children were living with him and his present wife in their California home. One was by his 1972 marriage and two were by a former marriage of his present wife. His financial plight is further evidenced by his failure to engage an attorney to prepare a brief and argument on this appeal. He was well represented on the trial level. The records before us include a carefully prepared trial brief which we have examined and studied.

George visited Victoria twice after the parents' separation. The first was in the fall of 1968, prior to the divorce. The second visit took place in December 1971 at the Knop's home in Ricketts. George regularly sent Victoria birthday, Christmas and Easter presents. They were accompanied by cards signed "Love, Your Old Dad." He wrote no letters to Victoria. He stated he

" * * * didn't realize she could read * * * the last year or two." At trial time Victoria was eight years old and a third grade student.

George lived in California during all relevant times except December 1971 until June 1972, when he lived in Nebraska. He testified Evelyn discouraged his efforts to visit Victoria and often refused to allow him to talk with her on the telephone. George stated he made six or seven telephone calls a year asking to talk with or see Victoria.

Evelyn testified George called about four times between October 1968 and her March 1970 marriage to Richard and about seven times thereafter. The last of these calls was in December 1972, over two years prior to trial. She further testified George made no attempt to visit Victoria from October 1968 until her remarriage in March 1970. Evelyn described the December 1971 visit, stating George arrived unexpectedly but was allowed to enter the house. Victoria was scared of him and stated she didn't want to talk to him. Victoria went to her mother in another room of the house. Necessarily George's visit was of short duration.

The record evidence is undisputed that Richard and Evelyn have provided Victoria with a good home environment, that Richard has established a loving father-daughter relationship with Victoria and that she is a healthy, happy and well-adjusted child. The Knops are church-going people and take Victoria to Sunday School.

Victoria's homeroom teacher testified Victoria was a healthy child, that she was * * * doing as well as any normal child her age," and described her as " * * * a very-totally full of life, cute little girl [with] lots of friends."

Ruth Vaage, Crawford County case worker for the Department of Social Services, investigated to determine whether the proposed adoption would be desirable. She interviewed Evelyn, Richard and Victoria.

She concluded the adoption would be in the best interest of the child.

Ann Delanty, a close friend of the Knops, testified the Knop home was "one of the better I have been in." She also stated both Evelyn and Richard have a "really great relationship" with Victoria. She said they include her " * * * in just everything they do" and respond to her affection with affection.

Evelyn was working as a bookkeeper for a local bank at trial time. She and Richard had no other children at home but were expecting a child in August. The report of the Department of Social Services revealed Evelyn would no longer be working outside the home after August.

Richard was 37 years old and worked as an intrastate truck driver, coming home daily. When asked why he wanted to adopt Victoria, Richard stated:

"Well, she has been living in our home for a little over four years. And we got along with her good. We do everything together. She looks upon me as dad. Anyhow, she always calls me 'Dad'. And I support her fully. And she uses the name Knop, although she knows what her regular name is, and I just think it's that much better for the family if I could adopt her."

George's reasons for opposing the adoption were expressed as follows:

"Q. Mr. Zimmerman, why don't you want this adoption?

"A. Because I still want to see Vicki, No. 1. She is my flesh and blood. She is my daughter. True, Mr. and Mrs. Knop give her a very good home, and stuff like this. She goes by the name of Knop already. She is a Zimmerman, and I want her to stay a Zimmerman until she gets married. She is a complete opposite of her mother for looks.

"Q. This is your sole reason?

"A. No, that's not my sole reason.

"Q. What other reason?

"A. Number one, I just don't want her adopted. I don't want her name changed. I named her Victoria Lea. My name is Zimmerman. And I put that on it too. I just don't want her name changed. That's the main reason. She is mine. She is my flesh and blood just as much as hers."

II. Our review of this equity adoption proceeding is de novo. Rule 334, Rules of Civil Procedure.

■ Adoption was unknown at common law. In re Adoption of Clark, Iowa, 183 N.W.2d 179, 182. Adoptions and the procedure therefor are statutory and are found in Code chapter 600. Under section 600.3 the consent of a noncustodial parent is required for an adoption so long as such parent is making either material or monetary contributions to the support of the child. In re Adoption of Harris, Iowa, 219 N.W.2d 526, 529; In re Adoption of Clark, supra, 183 N.W.2d at page 184. However, the noncustodial parent does not have power to veto the adoption merely because he possesses visitation rights. In re Adoption of Vogt, Iowa, 219 N.W.2d 529, 531.

■ We agree with the trial court's conclusion that George had not made either material or monetary contributions to Victoria's support and therefore has no veto power over the adoption.

■ III. Adoption however is not to be granted unless the evidence demonstrates it is wise.

■ The rule is now firmly established that in determining whether the adoption should be granted the court is required to view the evidence in the light of three competing interests, the interest of the child, the interest of the noncustodial parent and the interest of petitioner. The welfare of the child is paramount but not the only consideration. It is permitted only if a balancing of the competing interests show it is wise. In re Adoption of Vogt, supra, 219 N.W.2d at 531; In re Adoption

of Harris, supra, 219 N.W.2d at 528; In re Adoption of Keithley, Iowa, 206 N.W.2d 707, 711, 712; In re Adoption of Clark, supra, 183 N.W.2d at 183.

IV. The trial court apparently found this case factually comparable to In re Adoption of Keithley, supra. We disagree. In Keithley the noncustodial mother succeeded in obtaining a reversal of the trial court's grant of the stepmother's petition for adoption where she demonstrated her continuing desire to maintain a relationship with her son. Until hostility developed between the natural mother and stepmother the mother regularly exercised her visitation rights and frequently on weekend visits took her son to the zoo, a ship, the movies and picnics. A close relationship existed between them. Evidence in Keithley revealed the natural mother's attempts to visit were resisted and resented by the custodial and stepparents. She sought court protection of her visitation rights. Implicit in the argument was the stepmother's assertion the visitations were detrimental to the child and should be permanently cut off by adoption decree. This court refused to do so, placing the blame for the difficulties surrounding visitation on the custodial and stepparents.

The record here clearly demonstrates George does not have that capacity and interest in Victoria possessed by the noncustodial mother in Keithley.

Richard, on the other hand, has shown his interest in Victoria is genuine and akin to that of a father's love for his child. He and Evelyn provided Victoria stable home life for four years. Richard was willing to assume the responsibilities of a father through legal recognition of a relationship that exists in fact.

Victoria has flourished in the Knop home. At the time of the Knop marriage she was a withdrawn child. She was described at trial time as "bubbly," "natural," "charming," "affectionate" and "very friendly."

After balancing the interests of Victoria, George and Richard we believe it wise to grant the adoption.

The judgment and decree of trial court is reversed. This case is remanded to the trial court for entry of decree consistent with our holding herein.

Reversed and remanded.