In the Matter of the ADOPTION OF Adam Ray GIBSON, minor.

Linda Lee GONZALES and Joseph Luis Gonzales, Petitioners-Appellees,

v.

Belinda Marie GIBSON, natural mother, Appellant.

No. 3–58529.

Supreme Court of Iowa.

March 17, 1976.

J. C. Irvin, Shenandoah, for appellant.

Richard G. Davidson, Clarinda, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REES, JJ.

REES, Justice.

We are concerned in this appeal with the future of Adam Ray Gibson, a child two

years old, who was born on December 24, 1973. On July 9, 1975, trial court granted the petition for the adoption of Adam by Joseph Luis Gonzales and Linda Lee Gonzales. Belinda Marie Gibson (now Thayer), the child's natural mother, resisted the adoption and sought to withdraw her consent thereto, and she now appeals from the court's degree granting adoption and asks that the custody of Adam be placed with her. We affirm the action of the trial court.

The record indicates the child's mother, Belinda, was married to Carl Ray Gibson, the natural father of the child, in July of 1973. Belinda was aged 18 at the time of her marriage. Adam was born to Belinda and Carl when the couple resided in Red Oak.

Carl apparently had difficulty maintaining steady employment. In late February 1974, the family moved in with the petitioners, Joseph and Linda Gonzales, and their adopted daughter Angela in Shenandoah. Linda Gonzales had been married to Carl's father at one time. The record leaves little doubt but that Linda assumed substantially all of the responsibilities for the care and rearing of Adam following his joining the Gonzales household. Neither is there doubt that Belinda relinquished virtually all of her duties of motherhood toward the child at that time.

On March 15, 1974, Carl and Belinda Gibson executed a consent to the adoption of Adam by Joseph and Linda Gonzales, and the latter instituted proceedings for the child's adoption. It appears Carl and Belinda were having serious marital difficulties during the period, and Belinda instituted proceedings for the dissolution of their marriage. She left the Gonzales home in April 1974 and moved to Fairfax, Missouri, where she lived in the home of Mrs. Isaac Thayer, the mother of Belinda's present husband. Belinda married Marvin Thayer on September 9, 1974, about two weeks after her marriage to Carl had been dissolved by decree of the Page District Court.

On June 17, 1974, Belinda filed a resistance to the petition of Joseph and Linda Gonzales for the adoption of Adam. To her resistance she attached a document which she designated a withdrawal of consent to adoption. In pertinent part it provided:

"The undersigned further states that at the time of the execution of such consent the undersigned and her husband were living in the home of the petitioners, that the undersigned and her husband, Carl Ray Gibson, were having marital difficulties and that the undersigned felt that she was not in a position either financially or emotionally to care and provide for her child; that at such time she felt that it would be in the best interest of her minor child for him to be adopted by Linda Lee Gonzales and Joseph Luis Gonzales.

"That subsequent to the execution of such consent the undersigned has changed her residence to Fairfax, Missouri, and has instituted a marriage dissolution action with respect to her marriage relationship with Carl Ray Gibson, said action pending in the Page County District Court; that the undersigned deeply regrets the execution of the aforesaid consent to adoption; that the undersigned has a strong and abiding love for her child and is able and desires to provide a good and suitable home for such child; that the undersigned further states that it would be in the best interest of Adam Ray Gibson for him to be returned to his natural mother and for him to be permitted to be reared and raised by his natural mother with the care and love which she so strongly desires to provide and give her child."

Hearing on the adoption matter commenced April 8, 1975, and was concluded the following day. On July 9, 1975, trial court filed its decree granting the adoption to Joseph Luis and Linda Lee Gonzales as prayed.

Belinda, the appellant, states the following issues for review:

(1) Trial court erred in failing to void the consent to adoption executed by her; and

(2) Trial court erred in finding it was in the best interests of Adam to grant the adoption.

■ The two questions presented by the stated issues are so interrelated that they are best treated together. More explicitly, it is obvious the best interests of the child is an important (and perhaps overriding) factor in the determination of the question as to whether trial court erred in refusing to allow the withdrawal of consent by the natural mother.

■ I. Our review in this adoption matter is *de novo.* Rule 334, Rules of Civil Procedure; *In re Adoption of Zimmerman,* 229 N.W.2d 245, 248 (Iowa 1975). We give weight to the findings of the trial court, but are not bound by them. Rule 344(f)(7), R.C.P.; *In Interest of Meek,* 236 N.W.2d 284, 289 (Iowa 1975).

■ Adoption, being a creature of statute and unknown at common law, is governed by chapter 600, The Code. See *In re Adoption of Clark,* 183 N.W.2d 179, 182–183 (Iowa 1971). Section 600.3, The Code, provides in part:

"The consent of both parents shall be given to such adoption unless one is dead, or is considered hopelessly mentally ill, or is imprisoned for a felony, or is an inmate or keeper of a house of ill fame, or unless the parents are not married to each other, or unless the parent or parents have signed a release of the child in accordance with the statute on child placing."

Carl Gibson, the natural father of the child, has not attempted to withdraw his consent to the adoption proceedings. The petitioners recognize and accept that Belinda's consent was also necessary.

In its decree trial court found the original consent by Belinda and Carl was executed voluntarily, with no duress, fraud, misrepresentation or overreaching. Belinda does not challenge such finding here and we believe the record manifestly establishes it as correct. Rather, Belinda urges in this appeal trial court erred in refusing to allow her to withdraw such consent as she attempted to do by filing her withdrawal with her resistance to adoption.

It was once generally held consent could be arbitrarily revoked at any time before decree. See H. Uhlenhopp, "Adoption in Iowa", 40 Iowa L.Rev. 228, 263 (1955); Note 156 A.L.R. 1011. Such has not been the rule in this jurisdiction, however—at least, since the question was presented to us in 1952 in *In re Adoption of Cannon,* 243 Iowa 828, 53 N.W.2d 877. In *Cannon* we held the custodial natural parent had no absolute right to withdraw, without cause or reason given, his consent once it had been relied upon. Our conclusion in *Cannon* was based upon the individual circumstances and a consideration of the interests of the parties in each case, especially the best interest of the child involved. In *Stotler v. Lutheran Social Service of Iowa,* 209 N.W.2d 121 (Iowa 1973), we followed *Cannon* as authority for the proposition that permitting avoidance of a previously given consent to adoption is a matter resting in the sound discretion of the court. In *Stotler,* we were concerned with an attempt to void the release of a child to a licensed child-placing agency pursuant to chapter 238, The Code, and the claim challenged the initial validity of the release. In that case, we perceived a legislative intent that such an agreement be neither absolutely irrevocable nor capable of being arbitrarily withdrawn. Thus, we reasoned that "good cause" must be shown as a basis for such revocation.

■ We now believe the same parameters are present in the situation with which we are here concerned, namely, a consent to adoption under § 600.3, The Code. Such being true, we believe the following rules may be drawn from *Cannon* and *Stotler* (given an initially valid consent to adoption):

(1) The party wishing to withdraw such consent to adoption must demonstrate adequate cause for the withdrawal of such consent.

(2) Whether to allow the withdrawal of such consent is a matter resting in the sound discretion of the court after consideration of the interests of all parties, with paramount attention given to the best interests of the child involved.

■ Applying the above suggested rules to the instant case, we conclude trial court must be affirmed.

Belinda argues that the factors which led to her execution of the consent to adoption no longer exist. At the time of the execution of the consent, she contends, she knew little about child care. It is manifest from the record that at the time she lacked the maturity necessary to the proper parenting of a child. She was having serious marital difficulties with Carl. The situation was complicated by a very bad economic picture and almost total lack of income. In contrast she now points to her apparently stable present marriage and good home, an adequate financial situation, and a claimed emotional ability to care and provide for Adam.

It is obvious Belinda is now better off and better able to provide the care and affection which Adam needs. Nonetheless, we are not persuaded her change of heart and the change of circumstances to which she testified constitute sufficient good cause for the revocation of her earlier consent in the light of abundant evidence it would be in the child's best interest to allow his adoption by Joseph and Linda Gonzales.

We find adequate support for the findings of fact made by the trial court. The court found that during the short time Belinda resided in the Gonzales home, she was away from the home much of the time and failed or refused to look after or take care of Adam. After leaving the home, she seldom came to visit the child, and on the occasions she did visit, she spent very little time with Adam and paid little attention to him. Trial court found that even before the birth of the child, Belinda had demonstrated and expressed a wish not to keep the child and made some inquiries regarding the placing of the child with someone else after his birth. Trial court found that after Adam's birth Belinda had the opportunity to care for him in the home of her parents, but she chose to place her social activities and other interests above her responsibility for the care of the baby. At the time of the adoption proceedings, Adam had been in the Gonzales home for 14½ months, during which time he received all of his support from the Gonzales family without significant help or contribution from the natural parents. Trial court found that as the result of her second marriage, Belinda had responsibility for the care of three small children of her second husband, and would not be able to care for an additional child in as satisfactory a manner as would Joseph and Linda Gonzales.

II. The record is replete with evidence of the Gonzales' love and affection for the child and the fine care he has been receiving in their home. The adoptive parents made it their concern to familiarize themselves with the allergy problems the child had had since birth. They have provided proper diet and have done everything possible for the child since he came into their home at a very young age. Before the Gonzales family undertook the care of Adam, the child had had severe dietary and medical problems which have been effectively treated. The Gonzales couple has helped Adam develop into a healthy and well-adjusted child. They have given him a caring and loving environment and there is every indication that they will continue to do so.

We feel justified in noticing the fact that Adam is now two years old and has spent almost his entire lifetime in the care of Joseph and Linda Gonzales. Bonds of affection and familial ties have been forged which we are hesitant to break. We are convinced the best interests of the child

**544**

were served in this case by the refusal of the trial court to permit the withdrawal of the natural mother's consent to adoption and the granting of the petition for the adoption of the child by Joseph and Linda Gonzales.

We must, therefore, affirm the action of the trial court.

AFFIRMED.