240 N.W.2d 674 (1976)
In the Matter of the ADOPTION OF Tina Marie GUSTAFSON, a minor.
Carey L. HETRICK, Appellee,
v.
Marlin GUSTAFSON, Appellant.
No. 2-58497.
Supreme Court of Iowa.
April 14, 1976.
*675 James W. Gailey, Newell, for appellant.
McDonald, Sayre & McDonald, Cherokee, for appellee.
Heard before MOORE, C. J., and LeGRAND, UHLENHOPP, HARRIS and McCORMICK, JJ.
LeGRAND, Justice.
This is an appeal to challenge a district court decree allowing Carey L. Hetrick to adopt Tina Marie Gustafson. We affirm the trial court.
Tina Marie Gustafson was born on July 6, 1968. When she was one year old, she was adopted by Carol Gustafson (now Carol Hetrick) and Marlin Gustafson. Tina's natural mother was Marlin Gustafson's sister. On March 12, 1971, approximately a year-and-a-half after the adoption, Carol's marriage to Marlin Gustafson was terminated by a dissolution decree which awarded custody of Tina to Carol with visitation rights to Marlin.
On September 9, 1972, Carol married Carey L. Hetrick, the petitioner here. In November of that year Marlin married his present wife, Karen, who had one daughter by a previous marriage. Marlin has adopted that child.
Tina, the subject of this adoption proceeding, has lived with Carol and Carey L. Hetrick from the date of their marriage. On April 15, 1975, Hetrick filed a petition asking that he be permitted to adopt her. Carol consented in writing to the adoption. *676 Marlin Gustafson resisted the adoption below and continues to do so here.
In our de novo consideration of this case, the principal, but not the sole, criterion is the long-range best interests of the child. Also to be considered are the rights of the parents, both Carol and Marlin. In re Adoption of Zimmerman, 229 N.W.2d 245, 248 (Iowa 1975); In re Adoption of Vogt, 219 N.W.2d 529, 531 (Iowa 1974).
Chapter 600, The Code, is the statutory basis for adoption in this state. We are particularly concerned with § 600.3 which states in part as follows:
"* * * The consent of both parents shall be given to such adoption unless one is dead, or is considered hopelessly mentally ill, or is imprisoned for a felony, or is an inmate or keeper of a house of ill fame, or unless the parents are not married to each other, or unless the parent or parents have signed a release of the child in accordance with the statute on child placing. * * * If not married to each other, the parent having the care and providing for the wants of the child may give consent. * * * " (Emphasis added.)
I. Marlin asserts his consent is a condition precedent to a decree of adoption because he qualifies as a parent "having the care and providing for the wants" of his daughter Tina. If Marlin is right in this contention, his consent to the adoption is necessary. In re Adoption of Vogt, supra, 219 N.W.2d at 531-532. We set out the reasons Marlin's position is without merit.
The decree of dissolution ordered Marlin to pay $75 per month for Tina's support. He complied with this order for approximately a yearuntil Carol married Mr. Hetrick. At the time of the adoption hearing, he had made no support payments for thirty-three months. He admitted this to be true but stated Carol had excused him from further payments, saying he need only provide clothing for the child in lieu of the monthly support payments. Carol denies making any such statement, and it is of little significance whether she did or not. In the first place, the record does not show Marlin furnished clothing for the little girl on any regular basis. Taking the view of the evidence most favorable to him, we find he made no material contribution toward the expense of clothing his daughter. He gave her Christmas and birthday gifts of clothing and toys, but this is hardly "providing for the wants" of the child as contemplated by the statute.
Furthermore Marlin cannot escape the demands of § 600.3 by any out-of-court agreement with his wife. Before his consent is required it must affirmatively appear that he is making substantial contributions, monetary or otherwise, to the support of the child. In re Adoption of Zimmerman, supra, 229 N.W.2d at 248 and citations. No such showing was made by Marlin.
This case is easily distinguishable from Vogt. There we found the noncustodial father had complied with the decree ordering him to support his child. We held his consent was necessary before an adoption could be decreed. Here, Marlin disregarded the support provisions in the decree of dissolution. For almost three years prior to the adoption hearing he had paid nothing toward Tina's support.
We hold Marlin was not a parent having the care of the child nor was he providing for her wants. The trial court was right in holding his consent to the adoption was not required.
II. Since we have found in Division I of this opinion that Marlin does not have veto power over this adoption, we must next decide the more troublesome question: Is Tina's adoption by Hetrick wise? It is in this context that we must consider the three competing interestsTina's, Carol's, and Marlin's.
The problem is stated this way in In re Adoption of Keithley, 206 N.W.2d 707, 711-712 (Iowa 1973):
"In determining whether the adoption should be granted, we are here required to view the evidence in the light of three *677 competing interests, the interest of the child, the interest of the natural mother and the interest of the stepmother. * * The welfare of the child is paramount but not the only consideration. Adoption is drastic. It is permitted only if a balancing of the competing interests show it is wise. In re Adoption of Clark, 183 N.W.2d 179, 184 (Iowa 1971) and citations."
This quotation from Keithley is repeated with approval in Vogt, 219 N.W.2d at 531.
One of the principal areas of dispute in the testimony is whether Tina was adversely affected by Marlin's exercise of visitation rights granted under the dissolution decree. In this regard, it must be kept in mind that Marlin, in addition to be Tina's adoptive father, was her natural uncle. Marlin's mother, in addition to being the child's adoptive grandmother, was also her natural grandmother.
The decree granted Marlin "reasonable" visitation rights without elaboration. At first Marlin had the child once a week, usually on the weekend. She would ordinarily stay overnight with him at his parent's home. Later, visitation was limited to every other week. Still later, in January of 1975, Carol refused to permit further visitation on the recommendation of both the school psychologist and a psychiatrist. Her decision came about in this way.
Tina's first grade teacher advised Carol that Tina was a problem in school. Her work habits were described as bad, she wanted the teacher's full attention at all times, she was unfriendly with the other children, and was disruptive of classroom discipline. She would sit on the floor instead of at her desk, she would bother other children and keep them from doing their work, she had emotional outbursts and would cry if corrected. The teacher, Mrs. Kappenman, recommended that Carol and her husband discuss this problem with the school psychologist.
The school psychologist did not testify but Carol testified to his conclusions without objection. The psychologist recommended that visitation rights either be terminated or made as infrequent as possible. In his opinion, the visits were "very confusing for Tina in the respect that she was having a hard time to distinguish which was her home, who her parents were and things like that." It was at this time and in response to this suggestion that Carol discontinued Marlin's visitation privileges.
Later Tina was examined by Dr. Fukumori, a child psychiatrist and chief of medical services at the Cherokee Mental Health Institute, where Carol was employed. After physical and psychological examination; Dr. Fukumori and another psychiatrist, together with the staff psychologist, diagnosed Tina's condition as hyperkinetic. He described this as a condition consisting of four major signsoveractivity, distractability, short attention span and impulsivity.
Dr. Fukumori put Tina on drug therapy. He also advised Carol of Tina's need for "consistent parenting," which he described as "one set of parents giving consistent advice, consistent discipline." He recommended that visitation with Marlin be terminated if possible.
Mrs. Kappenman testified that after Tina's meetings with Dr. Fukumori there was a marked change in her behavior. Mrs. Kappenman said that she gets along much better with the other children; she accepts the fact that they are entitled to as much attention as she; she is able to stay at her desk and do her work; and her general behavior has improved immensely.
Carol also testified to the decided improvement in Tina's conduct after the examination and diagnosis by Dr. Fukumori. She was much happier; she was more obedient; she could concentrate better; she was no longer despondent and moody. Her whole pattern of behavior changed.
Whether this was due to the medication, to the termination of the visitation, or to a combination of both is, of course, the subject of varying opinions. There is no question, however, that her conduct both at home and at school improved dramatically.
The evidence shows, too, that the home in which Tina had lived for approximately *678 three years at the time of the adoption hearing is a good one. Carol's marriage to Carey L. Hetrick is apparently happy and stable. Carey professes love and affection for Tina, and Tina reciprocates that feeling. Their relationship is warm and good.
The only evidence introduced by Marlin was his own testimony and that of his wife Karen. They professed a desire for Tina to be in their home as much as possible and a willingness to pay support according to the terms of the decree. No doubt Marlin has genuine love and affection for the little girl. However, we cannot refrain from referring to his total neglect of his obligation to support her, a neglect which persisted for almost three years. His belated willingness to make support payments now must be judged against his desire to prevent her adoption by Mr. Hetrick.
As we have said, adoption is a drastic step. It should not be decreed lightly, particularly when a parent registers opposition thereto. We have given careful consideration to the evidence, we have weighed the competing interests referred to in Keithley and Vogt, particularly those of Tina and Marlin.
We conclude that the trial court was right in finding that Tina's best long-range interests lay with Carol and Carey Hetrick. The decree of adoption should be and hereby is affirmed.
In addition to the petition for adoption, there was heard at the same time Marlin's application for modification of the dissolution decree to provide for further and specific visitation rights. In view of our conclusion that the decree of adoption should be affirmed, the application for modification is dismissed.
AFFIRMED.